**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| F.P. DEVELOPMENT, LLC, | § | Case No. 2:18-cv-13690 |
| a Michigan corporation | § | |
|     *Plaintiff/Counter-Defendant,* | § | Honorable George Caram Steeh |
| | § | |
| V. | § | |
| | § | **ORAL ARGUMENT REQUESTED** |
| CHARTER TOWNSHIP OF, | § | |
| CANTON, MICHIGAN, a | § | |
| Michigan municipal corporation | § | |
|     *Defendant/Counter-Plaintiff.* | § | |

**PLAINTIFF/COUNTER-DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56(a), Plaintiff/Counter-Defendant, F.P. DEVELOPMENT, LLC (hereafter, "F.P.") hereby moves for summary judgment on its claims against Defendant/Counter-Plaintiff, CHARTER TOWNSHIP OF CANTON (hereafter "Canton").

Canton Code of Ordinances, Art. 5A, (the "Tree Ordinance" or the "Ordinance") makes it a civil and criminal violation for a property owner to remove certain trees from its property without a permit from Canton. A permit will only be granted if Canton agrees that the removal is "necessary" and the property owner agrees to pay up to $450 (the alleged "fair market value") for each removed tree, or

agrees to plant up to three trees as replacement.  Canton Code of Ordinances, Art. 5A.08.

F.P., which owns property subject to the Tree Ordinance and has been subject to fines thereunder, brings this lawsuit challenging the constitutionality of the ordinance.  This motion is based on the grounds that there is no genuine issue as to any material fact and that F.P. is entitled to summary judgment as a matter of law because: (1) the Tree Ordinance constitutes an unconstitutional taking in violation of the Fifth Amendment; (2) the Ordinance is an unconstitutional seizure of property in violation of the Fourth Amendment; (3) the Ordinance is an unconstitutional condition on the use of property in violation of the Fourteenth Amendment; and (4) the fines and penalties authorized by the Tree Ordinance, as well as the specific fine Canton seeks against F.P., violate the excessive fines clause of the Eighth Amendment.  In support of this Motion, F.P. relies on the pleadings on file with the Court, the facts, law, and arguments contained in the accompanying Brief in Support of this Motion, the declaration and exhibits attached thereto, and upon such other matters as may be presented to the Court at the time of the requested hearing.

Pursuant to LR 7.1(a), the undersigned counsel conferred with Canton's counsel regarding these claims.  The matter cannot be resolved and Canton will oppose this motion.

Respectfully submitted,

ROBERT HENNEKE
Texas Bar No. 24046058
rhenneke@texaspolicy.com
THEODORE HADZI-ANTICH
CA Bar No. 264663
tha@texaspolicy.com
CHANCE WELDON
Texas Bar No. 24076767
cweldon@texaspolicy.com
Texas Public Policy Foundation
Center for the American Future
901 Congress Avenue
Austin, Texas 78701
Telephone:   (512) 472-2700
Facsimile:   (512) 472-2728

MICHAEL J. PATTWELL (P72419)
mpattwell@clarkhill.com
CLARK HILL PLC
212 E. Cesar Chavez Avenue
Lansing, Michigan 48906
Telephone:   (517) 318-3043
Facsimile:   (517) 318-3082

By:      */s/Chance Weldon*
        CHANCE WELDON

3

# CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2019, I caused electronic filing of the foregoing document with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all properly registered counsel.

*/s/Chance Weldon*
CHANCE WELDON

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | | |
|---|---|---|
| F.P. DEVELOPMENT, LLC, | § | Case No. 2:18-cv-13690 |
| a Michigan corporation | § | |
| *Plaintiff/Counter-Defendant,* | § | Honorable George Caram Steeh |
| | § | |
| V. | § | |
| | § | |
| CHARTER TOWNSHIP OF, | § | |
| CANTON, MICHIGAN, a | § | |
| Michigan municipal corporation | § | |
| *Defendant/Counter-Plaintiff.* | § | |

## PLAINTIFF'S BRIEF IN SUPPORT OF ITS
## MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56(a), Plaintiff/Counter-Defendant, F.P. DEVELOPMENT, LLC (hereafter, "F.P.") files this brief in support of its motion for summary judgment on its claims against Defendant/Counter-Plaintiff, CHARTER TOWNSHIP OF CANTON (hereafter "Canton").

## CONCISE STATEMENT OF ISSUES PRESENTED

Canton Code of Ordinances, Art. 5A.05, (the "Tree Ordinance" or the "Ordinance") makes it a civil and criminal violation to remove trees from one's property without permission from Canton.  F.P., which owns property subject to the Tree Ordinance, filed a civil rights lawsuit in this Court seeking declaratory and injunctive relief form the unconstitutional Tree Ordinance.  The instant motion for summary judgment presents the following issues:

1. Does Canton's Tree Ordinance constitute an unconstitutional regulatory taking in violation of the Fifth Amendment?

2. Does Canton's Tree Ordinance constitute an unconstitutional seizure of property in violation of the Fourth Amendment?

3. Does Canton's Tree Ordinance constitute an unconstitutional condition on the use of property in violation of the Fourteenth Amendment?

4. Do the fines and penalties for violating the Ordinance for removing trees from one's property, including Canton's $47,898 fine levied against F.P., violate the "excessive fines" clause of the Eighth Amendment?

# CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*Horne v. Dep't of Agric.*, 135 S.Ct. 2419 (2015)(standard for *per se* takings); *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982)(standard for *per se* takings); *Penn Central Transp. Co. v. New York City*, 438 U.S. 104 (1978)(standard for *ad hoc* takings); *Presley v. City Of Charlottesville*, 464 F.3d 480, 487 (4th Cir. 2006)(standard or establishing that a land-use regulation is an unconstitutional seizure under the Fourth Amendment); *Miranda v. City of Cornelius*, 429 F. 3d 858, 861 (9th Cir. 2005)(balancing test for Fourth Amendment Seizure claims); *Dolan v. City of Tigard*, 512 U.S. 374 (1994)(standard for establishing an unconstitutional condition on the use of property); *Mira Mar Dev. Corp. v. City of Coppell*, 421 S.W.3d 74, 95-96 (Tex. App—Dallas, 2013)(Tree Ordinance was an unconstitutional condition under *Dolan*); *United States v. Bajakajian*, 524 U.S. 321, 334 (1998)(standard for establishing an excessive fine under the Eighth Amendment).

Case 2:18-cv-13690-GCS-EAS   ECF No. 26, PageID.307   Filed 09/30/19   Page 8 of 44

## TABLE OF CONTENTS

CONCISE STATEMENT OF ISSUES PRESENTED ............................................. ii

CONTROLLING OR MOST APPROPRIATE AUTHORITIES ......................... iii

TABLE OF AUTHORITIES ...................................................................................vi

INTRODUCTION ...................................................................................................1

LEGAL AND FACTUAL BACKGROUND ...........................................................2

    A. Legal Background: The Challenged Tree Ordinance.....................................2

    B. Factual Background: F.P. Removes trees from its property to
       prevent flooding.............................................................................................3

    C. Canton enforces the Tree Ordinance against F.P. ..........................................5

SUMMARY OF ARGUMENT ...............................................................................5

STANDARD OF REVIEW .....................................................................................8

ARGUMENT ..........................................................................................................8

I.    CANTON'S      TREE      ORDINANCE      IS      AN
      UNCONSTITUTIONAL REGULATORY TAKING ...................................9

    A. The Tree Ordinance is a *per se* regulatory taking because it
       effectively grants Canton constructive possession of the trees on
       F.P.'s property ...........................................................................................10

    B. The Tree Ordinance is a *per se* regulatory taking because it forces
       F.P. to maintain unwanted objects on the Property .....................................12

    C. The Tree Ordinance is a regulatory taking because it goes "too
       far" in depriving F.P. of the economic value of the Property ......................13

iv

II.   CANTON'S  TREE  ORDINANCE  CONSITTUTES  AN
      UNCONSTITUTIONAL SEIZURE ...........................................................16

      A. The Tree Ordinance creates a meaningful interference with F.P.'s
         property rights...............................................................................18

      B. The  interference  with  F.P.'s  property  rights  is  unreasonable
         because it is not justified by any risk to the public ......................................19

      C. The  interference  with  F.P.'s  property  rights  is  unreasonable
         because it is uncompensated..............................................................21

III.  CANTON'S  TREE  ORDINANCE  CONSTITUTES  AN
      UNCONSTITUTIONAL  CONDITION  ON  THE  USE  OF
      PROPERTY ........................................................................................22

IV.   CANTON'S  TREE  ORDINANCE  REQUIRES  THE
      IMPOSITION  OF  UNCONSTITUTIONALLY  EXCESSIVE
      FINES ................................................................................................26

CONCLUSION ..............................................................................................29

CERTIFICATE OF SERVICE ..........................................................................31

# TABLE OF AUTHORITIES

**Cases:**                                                                                                     **Page(s):**

*Austin v. United States*,
    509 U.S. 602 (1993)..................................................................................26, 27

*Bloem v. Unknown Dep't of the Interior Employees*,
    920 F.Supp.2d 154 (D.D.C. 2013)...................................................................21

*Bowen v. Gilliard*,
    483 U.S. 587 (1987)........................................................................................15

*Delaney v. Manshum*,
    146 Mich. 525 (Mich. 1906)...........................................................................10

*Dolan v. City of Tigard*,
    512 U.S. 374 (1994)...............................................................................7, 22, 23

*Groth v. Stillson*,
    20 Mich. App. 704 (1969) ..............................................................................11

*Hendler v. United States*,
    952 F.2d 1364 (Fed. Cir. 1991) ................................................................12, 13

*Horne v. Dep't of Agric.*,
    135 S.Ct. 2419 (2015)...............................................................................10, 11

*Ker v. California*,
    374 U.S. 23 (1963)..........................................................................................16

*Keystone Bituminous Coal Ass'n v. DeBenedictis*,
    480 U.S. 470 (1987)........................................................................................15

*Koontz v. St. Johns River Water Mgmt. Dist.*,
    570 U.S. 595 (2013)........................................................................................22

*Loretto v. Teleprompter Manhattan CATV Corp.*,
    458 U.S. 419 (1982)..................................................................10, 12, 20

*Maritrans, Inc. v. United States*,
    342 F.3d 1344 (Fed. Cir. 2003) ...................................................15

*Mira Mar Dev. Corp. v. City of Coppell*,
    421 S.W.3d 74 (Tex. App.—Dallas, 2013) ............................................24, 25

*Miranda v. City of Cornelius*,
    429 F.3d 858 (9th Cir. 2005) ...................................................19, 20

*Mulder v. Durand Hoop Co.*,
    238 Mich. 373 (1927) ...................................................................10

*New Jersey Shore Builders Ass'n v. Township of Jackson*,
    2007 N.J. Super. Unpub. LEXIS 2987 (2007) ...............................................25

*Nollan v. California Coastal Comm'n*,
    483 U.S. 825 (1987)..................................................................7, 22

*Palazzolo v. Rhode Island*,
    533 U.S. 606 (2001).............................................................10, 13, 14

*Penn Central Transp. Co. v. New York City*,
    438 U.S. 104 (1978).............................................. 6, 10, 13, *passim*

*Pennsylvania Coal Co. v. Mahon*,
    260 U.S. 393 (1922).............................................. 11, 13, 15, *passim*

*Presley v. City of Charlottesville*,
    464 F.3d 480 (4th Cir. 2006) ...........................................16, 18, 19

*Severance v. Patterson*,
    566 F.3d 490 (5th Cir. 2009) ...............................................16, 18

*Tannian v. City of Grosse Pointe Park*,
　　1995 U.S. Dist. LEXIS 12084 (E.D. Mich. July 31, 1995)...........................17

*Timbs v. Indiana*,
　　139 S.Ct. 682 (2019)...................................................................................26

*United States v. Bajakajian*,
　　524 U.S. 321 (1998)............................................................. 26, 27, 28, *passim*

*United States v. Gray*,
　　484 F.2d 352 (6th Cir. 1973) .......................................................................17

*United States v. Jacobsen*,
　　466 U.S. 109 (1984).................................................................................18, 19

*United States v. James Daniel Good Real Prop.*,
　　510 U.S. 43 (1993)........................................................................................17

*United States v. Madison*,
　　226 Fed. Appx. 535 (6th Cir. 2011) .............................................................27

*United States v Proctor*,
　　489 F.3d 1348 (D.C. Cir. 2007)....................................................................17

*WCI, Inc. v. Ohio Dep't of Pub. Safety*,
　　No. 18-3962, 2019 U.S. App. LEXIS 15527 (6th Cir. May 24. 2019) .........27

**<u>Other Authorities:</u>**

Canton Code of Ordinances,
　　Art. 5A.01 ......................................................................................................2
　　Art. 5A.05 ......................................................................................................2
　　Art. 5A.05(A).................................................................................................2
　　Art. 5A.05(B).................................................................................................2
　　Art. 5A.08 ..................................................................................................3, 26
　　Art. 5A.08(E)................................................................................................12

Fed. R. Civ. P.
　　(56)a .................................................................................................8

Steven L. Danver, *Revolts, Protests, Demonstrations, and Rebellions
　　in American History: An Encyclopedia* (2010), p. 183-185 ...........................9

## INTRODUCTION

In late 2018, F.P. removed trees and scrub brush from its property in order to access a drain that had become clogged and was causing flooding.  F.P.'s activities on its property did not harm anyone.  Nonetheless, Canton seeks tens of thousands of dollars from F.P. for engaging in basic property maintenance.

Under Canton's Tree Ordinance, it is a crime to remove certain trees from private property without a permit.  A permit will only be granted if Canton agrees that the removal is "necessary" and the property owner agrees either to pay $450 for each removed tree or to plant up to three trees as replacement.  Because F.P. did neither, Canton sought approximately $47,898 from F.P. for allegedly violating the Tree Ordinance.

Both on its face and as applied in this case, the Tree Ordinance constitutes an unconstitutional taking in violation of the Fifth Amendment, an unconstitutional seizure of property in violation of the Fourth Amendment, and an unconstitutional condition on the use of property in violation of the Fourteenth Amendment.  In addition, the fines and penalties authorized by the Tree Ordinance, as well as the specific fine Canton seeks against F.P., violate the excessive fines clause of the Eighth Amendment because they are grossly disproportionate to any harm that conceivably could be caused.  Accordingly, F.P. asks this Court to declare that the

Tree Ordinance is unconstitutional and to issue an injunction preventing its enforcement against F.P.

## LEGAL AND FACTUAL BACKGROUND

### A. Legal Background: The Challenged Tree Ordinance

The Tree Ordinance requires that certain[1] private property owners, including F.P., apply for and receive a permit from Canton before removing any "tree"[2] from their properties.  "Tree" is broadly defined to include "any woody plant with at least one well-defined stem and having a minimum [diameter at breast-height] ("DBH") of three inches."  Canton Code of Ordinances, Art. 5A.01. (Ex. 1).  If the targeted tree happens to be in a "forest," restrictions are even greater.  Canton prohibits not only removal, but also damage to any tree within a forest.  Canton Code of Ordinances, Art. 5A.05 (A).  Even removing undergrowth or brush in a forest requires Canton's approval.  *Id.*; Dep. of J. Goulet at 57:23-25; 58:1-5. (Ex. 2).  "Forest" is defined as "any treed area of one-half acre or more, containing at least 28 trees with DBH of six inches or more."  Canton Code of Ordinances, Art. 5A.01.  Canton asserts that the tree removal in this case occurred in a "forest."  *See* Dep. of J. Goulet, 9:24-25, 10:1-4.

---

[1]     The Ordinance exempts occupied residential lots under two acres, farms, and licensed nurseries. Art. 5A.05(B).  None of which are at issue here.

[2]     The Tree Ordinance distinguishes between trees in a "forest" and trees not in a "forest."  If the tree is not in a "forest," a permit is required only if the tree is 6 inches DBH or greater.  *See* Art. 5A.05(A).

2

Generally, a tree removal permit will only be granted if Canton concludes that the removal is "necessary" and the owner agrees to either 1) replace any removed tree with up to three trees of Canton's choosing, or 2) pay a designated amount (currently between $300 and $450 per tree) into Canton's tree fund. Canton Code of Ordinances, Art. 5A.08. These requirements are mandatory and apply regardless of the impact or benefit that may accrue from the tree removal. *Id.*; Dep. of J. Goulet at 18:2-6. Payments into the tree fund need not be used solely for planting trees. Dep. of L. Thurston at 41:1-7. Nor do trees purchased with those funds have to be planted on or near the subject property. Dep. of J. Goulet at 52:7-13.

Under the Ordinance, property owners who remove trees from their properties without a permit are required to pay the "market value" of any tree removed, or may pay the fine in-kind by replacing each removed tree with up to three trees of Canton's choosing. *See* Dep of L. Thurston at 8:7-16 (Ex. 3). Additionally, a property owner may be subject to criminal penalties of up to $500 and 90-days imprisonment. Dep. of J. Goulet at 35:1-10.

**B. Factual Background: F.P. Removes trees from its property to prevent flooding**

F.P. is a real estate holding company that exists primarily to manage property owned by Frank Powelson. Dec. of F. Powelson at ¶ 3. (Ex. 4). Mr. Powelson's primary business is known as POCO, a business he took over from his father. *Id.* at ¶ 4. POCO builds, stores, leases, transports, and sells signs. *Id.* at ¶ 8. The business

3

is headquartered on the lot adjacent to the property at issue in this case, which is an approximately 24-acre parcel located west of Sheldon Road and South of Michigan Avenue in Canton Township, Michigan (the "Property"). *Id*. at ¶ 5. The two properties are bisected by a drainage ditch that was originally dug in the 1800's and by law must be maintained by Wayne County. *Id*. at ¶ 16.

Over the years, the drain became clogged by fallen trees, scrub brush, and other debris. *Id*. at ¶ 17. With the recent increase in rainfall, these obstructions caused the drain to back up and resulted in flooding on the Property and a neighboring property owned by another company. *Id*. at ¶ 18. This flooding was killing trees, increasing mosquitos, and making it more difficult to navigate or use the properties. *Id*. at ¶ 19.

Mr. Powelson reached out to the County Drain Commissioner's office to see if the County would perform the required maintenance of the drain. *Id*. at ¶ 21. He was informed that the County would not do so. *Id*. at ¶ 22. As a result, in the Spring of 2018, F.P. entered into an agreement with Fodor Timber to clean the fallen trees and other debris from the drain. *Id*. at ¶ 24.

In order to reach the drain with heavy equipment, some tree removal was necessary. *Id*. at ¶ 26. As part of its agreement with Fodor Timber, F.P. offered Fodor the rights to any trees that had to be removed to access the ditch as well as

4

any fallen trees removed from the ditch.  *Id*. at ¶ 24.  In exchange, Fodor agreed to clean the ditch.  *Id*. at ¶ 25.

### C. Canton enforces the Tree Ordinance against F.P.

Before the work could be completed, Canton issued F.P. a Notice of Violation and Stop Work Order alleging violations of the Tree Ordinance and seeking an undisclosed amount in penalties.  Ex. 5.  Mr. Powelson immediately stopped the work.  Dec. of F. Powelson at ¶ 28.

There is no administrative appeals process for challenging the constitutional validity of a notice of violation or fine assessed under the Tree Ordinance.  Dep. of J. Goulet at 65:4-12.  Once a notice of violation has been issued, Canton may, at its discretion, initiate civil or criminal proceedings.  *Id*. at 31:1-8.  Canton initiated civil proceedings against F.P.'s neighbors seeking nearly $450,000 for violation of the Ordinance.  Ex. 6.  Fearing the possibility of such enormous penalties, F.P. filed suit for declaratory and injunctive relief in this Court under 42 U.S.C. §1983.  ECF 1. (Ex. 7).  Canton countersued for $47,898 in penalties for alleged violations of the Tree Ordinance.  ECF 13, p. 15. (Ex. 8).

### SUMMARY OF ARGUMENT

Canton's Tree Ordinance is unconstitutional in several ways.  First, both on its face and as applied, the Tree Ordinance violates the Fifth Amendment because it is an uncompensated regulatory taking.  Under Michigan law, a property owner's

right to fell and utilize trees on its property is a severable interest akin to minerals beneath the surface or standing crops.  When a government regulation wholly deprives the owner of the ability to utilize or alienate a severable interest in property, that regulation constitutes a *per se* taking of that severable interest, even if the owner maintains full title in the underlying property.  Here, the Tree Ordinance explicitly prohibits F.P. from felling, moving, or otherwise utilizing its trees without a permit, while impermissibly exacting substantial sums under the permitting program, thereby constituting a *per se* regulatory taking.  Furthermore, the Ordinance requires F.P. to maintain numerous unwanted objects, i.e., the trees, on its property.  The Supreme Court has held that any government mandated physical occupation of private property by unwanted objects—however small—constitutes a *per se* taking of the occupied property under the Fifth Amendment.  Moreover, the application of the Tree Ordinance against F.P. constitutes a regulatory taking under the balancing test established in *Penn Central Transp. Co. v. New York City*, 438 U.S. 104 (1978), because it goes "too far" in interfering with F.P.'s property rights in the trees and F.P.'s reasonable investment-backed expectations.  In effect, the Ordinance makes the Property useless to F.P. and unmarketable, while Canton asserts the Ordinance was enacted for some ill-defined "public benefit."  *Penn Central* forbids such overreaching government intrusions on property rights.

6

Second, both on its face and as applied, the Tree Ordinance constitutes an unreasonable seizure of private property in violation of the Fourth Amendment. An ordinance regulating private property constitutes a Fourth Amendment seizure when it creates a "meaningful interference with property" that is either not justified or not compensated. Here the Tree Ordinance creates a meaningful interference with F.P.'s property interest by preventing F.P. from felling, moving, or otherwise utilizing its trees. This interference is unreasonable because Canton concedes that the removal of trees will not injure F.P.'s neighbors. And this interference is uncompensated because Canton denies that it owes F.P. compensation.

Third, the Tree Ordinance creates an unconstitutional condition on the use of property under the standards set forth in Dolan *v. City of Tigard*, 512 U.S. 374 (1994) and *Nollan v. California Coastal Comm'n*, 483 U.S. 825 (1987). When government requires a permit to utilize property, the conditions for acquiring that permit must have a sufficient "nexus" to a legitimate government interest and be "roughly proportional" to the impact the proposed use will have on that interest. This requires an "individualized assessment" of the actual impact the proposed use has on neighbors. Under the Tree Ordinance, if F.P. wants a tree removal permit, it must pay Canton up to $450 for every tree removed, regardless of the actual impact that a tree removal would have on F.P.'s neighbors. Indeed, Canton concedes that it does not engage in any individualized impact assessment under the Tree Ordinance.

7

Applying this ordinance, Canton now demands that F.P. pay $47,898, despite the fact that Canton concedes there is no evidence that the removal of trees on the property injured F.P.'s neighbors or anyone else. Such a large exaction in the absence of actual harm fails under *Nolan* and *Dolan*.

Fourth, the penalties imposed under the ordinance are unconstitutionally excessive under the Eighth Amendment. A civil fine is unconstitutionally excessive when it is disproportionate to the actual harm caused by the offense or the maximum criminal penalty imposed for the same conduct. Here, the Tree Ordinance mandates that F.P. pay $47,898 for removing trees from its own property. Yet Canton admits that there is no evidence that the removal of these trees harmed anyone, and the maximum criminal penalty for violating a zoning ordinance is only $500—almost 100 times less than the civil fine sought in this case. This sort of gross disproportionality violates the Eighth Amendment.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## ARGUMENT

In 1722, British Authorities of the Crown in the American Colonies adopted a law almost identical to the one at issue here

8

(https://www.arboretum.harvard.edu/pinus-strobus-pine-tree-riot/).[3]  Under the law, it was illegal for colonists to cut down any white pine tree on their own property that was greater than 12 inches DBH.  Violators were fined £5 for any tree cut.  *Id.*

The law went largely unenforced for 50 years, until 1772, when the Royal Governor of New Hampshire sent representatives to Weare, New Hampshire, to enforce the Crown's tree fines.  *Id.*  The Colonists were so enraged that they captured the governor's representatives, subjected them to lashing (one lash for every tree the Crown claimed), shaved their horses, and ran them out of town.  *Id.*  In honor of that act of rebellion, the "Pine Tree Flag" became a symbol of independence and was the first flag authorized by George Washington to fly from the Colonial Navy's warships.  *Id.*  It should come as little surprise then that the Founders designed a Constitution that places multiple structural limitations on government power to prevent laws similar to the Crown's tree edict.  Accordingly, Canton's attempt to revive a modern version of the edict is flat-out unconstitutional.

## I. CANTON'S TREE ORDINANCE IS AN UNCONSTITUTIONAL REGULATORY TAKING

The Fifth Amendment, made applicable to the states by the Fourteenth Amendment, provides that private property shall not be taken "for public use,

---

[3]     Site last visited on September 24, 2019; *see also*, Steven L. Danver, *Revolts, Protests, Demonstrations, and Rebellions in American History: An Encyclopedia* (2010), p. 183-185.

without just compensation." *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001). There are two forms of takings subject to compensation under the takings clause: the classic taking—where the government formally acquires title to private property through eminent domain—and a regulatory taking. As relevant here, a regulatory taking can occur in three ways: 1) when the government effectively takes possession and control over an interest in property through regulation[4]; 2) when the government mandates that an owner maintain unwanted objects on the property for a public purpose, thus appropriating a portion of the property for the public without compensation[5]; or 3) when a regulation goes "too far" under the balancing test articulated in *Penn Central Transp. Co. v. New York City*, 438 U.S. 104 (1978). The Tree Ordinance meets the criteria of all three forms of regulatory taking.

**A. The Tree Ordinance is a *per se* regulatory taking because it effectively grants Canton constructive possession of the trees on F.P.'s property**

In Michigan, the right to own real property typically includes the right to fell and utilize any trees on that property. *See Delaney v. Manshum*, 146 Mich. 525, 528 (Mich. 1906). This is often referred to as the right to "timber." *See Mulder v. Durand Hoop Co.*, 238 Mich. 373, 375 (1927). The right to timber is a separate property interest that is severable from the underlying estate in the same manner as

---

[4]    *See Horne v. Dep't of Agric.*, 135 S.Ct. 2419 (2015).
[5]    *See Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982).

minerals.  *See e.g.*, *Groth v. Stillson*, 20 Mich. App. 704, 707 (1969) (trees are severable interests).

A property right is often described as a bundle of rights, including "the rights to possess, use and dispose of [it.]"  *Horne v. Dep't of Agric.*, 135 S.Ct. 2419, 2428 (2015).  When the government effectively takes control of any of these rights, it can give rise to a taking.  *See Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393 (1922) (restriction on access to severed mineral estate constituted a taking); *State Hwy. Commr. v. Hahn*, 380 Mich. 115, 117 (1968) (same).  In *Horne*, the plaintiffs successfully challenged a federal statute by which they were required to set aside a portion of their raisins for the government to control as a means of restricting the supply of raisins in the national raisin market.  The set-aside raisins remained on the plaintiffs' property, 135 S.Ct. at 2428, but the plaintiffs' could not sell, use, or destroy the raisins without being fined their "fair market value," *id*. at 2433.  The Court held that this was a *per se* taking.  As the Court explained, "[r]aisin growers subject to the reserve requirement thus lose the entire 'bundle' of property rights in the appropriated raisins—'the rights to possess, use and dispose' of them . . . gives rise to a taking as clearly 'as if the Government held full title and ownership.'"  *Id*. at 2428.

Just as the statute in *Horne* forbade the property owners from exercising any property right with regard to their raisins, the Tree Ordinance forbids F.P. from

11

exercising any property right with regard to its trees.  Like the raisins in *Horne*, the trees remain on F.P.'s property, but F.P. may not sell, use, or destroy them without paying Canton the "current market value." Canton Code of Ordinances, Art. 5A.08(E).   Accordingly, because Canton's tree ordinance effectively takes possession of the trees without compensation, it is a *per se* regulatory taking.

### B.  The Tree Ordinance is a *per se* regulatory taking because it forces F.P. to maintain unwanted objects on the Property

In addition to taking possession of the trees, the Tree Ordinance also constitutes a *per se* taking of portions of the underlying Property by requiring that F.P. maintain unwanted objects—trees—on the Property.  In *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435 (1982), the Court held that a state law requiring that landlords allow cable boxes to remain attached to their buildings constituted a *per se* taking that was entitled to compensation under the Constitution. The Court explained that forbidding the removal of the cable boxes was tantamount to "physical occupation authorized by government [and] is a taking without regard to the public interests that it may serve" *Id*. at 426.  This remains true, even if the occupation involves "relatively insubstantial amounts of space and do[es] not seriously interfere with the landowner's use of the rest of his land."  *Id*. at 430.

Similarly, in *Hendler v. United States*, 952 F.2d 1364 (Fed. Cir. 1991) the EPA drilled testing wells on private property in order to monitor groundwater contamination.   The court recognized that those wells served an important

12

government interest, but nonetheless held that the physical occupation of private property by an unwanted object constituted a *per se* taking warranting compensation. *Id*. at 1378, As that court explained, once a permanent physical occupation is established "…nothing more needed to be shown [to establish a taking]." *Id.*

Here, the physical invasion is far more extensive than the cable box recognized as a taking in *Loretto* or the test wells in *Hendler*.  Under the Tree Ordinance, property owners must maintain potentially thousands of unwanted trees on their property.  As these trees inevitably grow and spread over time, the extent of this legally mandated physical occupation increases over time.  Dep. of J. Goulet at 55:6-25; 56:1-7.  Accordingly, the ordinance is a *per se* taking under *Loretto*.

### C. The Tree Ordinance is a regulatory taking because it goes "too far" in depriving F.P. of the economic value of the Property.

The Tree Ordinance constitutes a regulatory taking under the balancing approach announced in *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978).  Under that approach, a government regulation that deprives a property owner of some—but not all—of a property's economic value may be a taking if the regulation "goes too far."  *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001) (quoting *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922)).

To determine whether the regulation goes too far, courts look at three factors: 1) "the economic impact of the regulation on the claimant"; 2) "the extent to which

13

the regulation has interfered with distinct investment-backed expectations"; and 3) "the character of the governmental action." *Palazzolo*, 533 U.S. at 633-34 (quoting *Penn Central*, 438 U.S. at 124).   These factors are not "mathematically precise variables, but instead provide[] important guideposts that lead to the ultimate determination whether just compensation is required." *Palazzolo*, 533 U.S. at 634.

The Tree Ordinance meets all three of the *Penn Central* regulatory takings criteria.  First, the economic impact of the Tree Ordinance on F.P. is substantial. Canton is seeking nearly $47,898 from F.P. for the removal of just a small portion of the trees from its property. ECF 13, p. 15.  Applied across the entire property, the fine would be catastrophic.  Dec. of F. Powelson ¶¶ 9-13; *see also*, Dep. of. F. Powelson at 13:17-25; 14:1. (the entire 62 acre parcel was purchased for approximately $550,000.).   Indeed, F.P.'s neighbors were fined approximately $450,000 for allegedly clearing 16-acres of their property.  *See* Ex. 6.  There is no reason to believe that F.P. would suffer any less crippling fines if it were to clear its property.

Second, the Tree Ordinance has substantially interfered with F.P.'s reasonable investment-backed expectations.  F.P. purchased the industrially zoned property from Canton with the reasonable expectation that it would be able to put the property to some business use. Dec. of F. Powelson at ¶¶ 6-7.  Here, F.P. is prevented from

14

making nearly any business use of the property without being subject to significant sanctions or exactions. *Id.* at ¶¶ 8-11.

Third, in determining the "character of the governmental action" courts ask whether the regulation is more akin to traditional nuisance abatement, for which no compensation is generally required, (*see Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 488, 492 (1987)) or more akin to a regulation to generate public benefits, in which case, "fairness and justice" demand that the cost of that burden "should be borne by the public as a whole." *See Bowen v. Gilliard*, 483 U.S. 587, 608-09 (1987). This determination requires that courts "inquire into the degree of harm created by the claimant's prohibited activity, its social value and location, and the ease with which any harm stemming from it could be prevented." *Maritrans Inc. v. United States*, 342 F.3d 1344, 1356 (Fed. Cir. 2003).

Canton admits that the removal of trees from private property is not a nuisance at common law, (Dep. of L. Thurston 11: 4-16), and admits that it has no evidence that the tree removal in this case caused any public injury. *Id.* at 16:20-25; 17:1-25; 18:1-7. Indeed, Canton's representative was quite clear that the purpose of the tree ordinance is to provide "public benefits"—not to remedy an actual injury. 48:23-25; 49:1-20. But government may not acquire a public benefit at a property owners' expense without paying the property owner for it. *See Mahon*, 260 U.S. at 416 ("a strong public desire to improve the public condition is not enough to warrant

15

achieving the desire by a shorter cut than the constitutional way of paying for the change."). The "desire to improve the public condition" is precisely the purpose of the Tree Ordinance, as acknowledged by Canton's designated representative during deposition. Dep. of L. Thurston at 16:20-25; 17:1-25; 18:1-7.

## II. CANTON'S TREE ORDINANCE CONSTITUTES AN UNCONSTITUTIONAL SEIZURE

Canton's enforcement of its Tree Ordinance is unconstitutional under the Fourth Amendment because it constitutes a meaningful interference with F.P.'s possessory interests in the Property without compensation or justification. *See Severance v. Patterson,* 566 F.3d 490, 503–04 (5th Cir. 2009). The Fourth Amendment, made applicable to the States by the Fourteenth Amendment, prohibits "unreasonable seizures" of private property. *Ker v. California*, 374 U.S. 23, 30 (1963). While this prohibition is most often encountered in the criminal context, multiple courts have held that it applies with equal force in the civil context to land use regulations that interfere with the possession or use of private property. *See e.g. Severance,* 566 F.3d at 503–04 (government mandated easement); *Presley v. City of Charlottesville*, 464 F.3d 480, 487 (4th Cir. 2006) (anti-fencing ordinance). Thus, a property regulation violates the Fourth Amendment if it is "(a) a meaningful interference with [a Plaintiff's] possessory interests in [its] property, which is (b) unreasonable because the interference is unjustified by law or, if justified, then uncompensated." *Severance,* 566 F.3d at 502.

16

While this test appears to track fairly closely to the takings clause of the Fifth Amendment, the Supreme Court has recognized takings and seizures as distinct claims, because they focus on different aspects of government action.  *See United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 50 (1993).  The takings clause is primarily concerned with whether the interference is for "public use" and whether the interference is compensated.  The Fourth Amendment, by contrast, is primarily concerned with whether or not the interference is "reasonable."  *See United States v. Proctor,* 489 F.3d 1348, 1352 (D.C. Cir. 2007) ("[T]he touchstone of the Fourth Amendment is reasonableness based upon the facts and circumstances of the case.") (citations omitted).

The Fourth Amendment also sweeps more broadly than the takings clause. While an unreported case in this jurisdiction held that the takings clause only applies to total deprivations of a property right (*see Tannian v. City of Grosse Pointe Park*, 1995 U.S. Dist. LEXIS 12084, at *15 (E.D. Mich. July 31, 1995)), in fact partial deprivations of property rights are actionable as seizures under the Fourth Amendment.  *See e.g., United States v. Gray,* 484 F.2d 352, 356 (6th Cir. 1973) (holding that temporarily removing rifles from a closet to copy down their serial numbers was a seizure.)

17

**A. The Tree Ordinance creates a meaningful interference with F.P.'s property rights**

The Supreme Court has held that a seizure of property occurs whenever "there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen,* 466 U.S. 109, 113 (1984).  Typically, regulations that prevent a property owner from excluding unwanted things from his property are sufficient to trigger Fourth Amendment protections.  For example, in *Severance,* 566 F.3d at 503–04, the court held that the government's claim of a public use easement on Carol Severance's beach front property was a Fourth Amendment seizure because it limited her right to exclude people and things from her property and therefore was a clear interference with her possessory interest in the property.  Similarly, in *Presley*, 464 F.3d 480, 487 the court held that the plaintiff had stated a claim for a Fourth Amendment violation when a city passed an ordinance that prevented the plaintiff from fencing her property to keep trespassers and trash off the property.

Here, the Tree Ordinance creates a meaningful interference with F.P.'s property interest in its trees by preventing F.P. from felling, moving, or selling its trees.  Indeed, the Tree Ordinance effectively prohibits F.P. from otherwise using the trees for any purpose other than perhaps enjoying them aesthetically or climbing them.  The Tree Ordinance also constitutes a meaningful interference with F.P.'s

18

interest in its land, because it denies F.P. the right to exclude unwanted trees from the property.

**B. The interference with F.P.'s property rights is unreasonable because it is not justified by any risk to the public**

To assess the reasonableness of a seizure under the Fourth Amendment, courts "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *United States v. Jacobsen*, 466 U.S. 109, 125 (1984).  In balancing these interests, a government "allegation that a seizure was for a public purpose does not somehow eliminate Fourth Amendment scrutiny." *Presley*, 464 F.3d at 487.  Instead, the alleged government purpose must be examined and balanced against the real-world effects of the seizure. *Id.*

For example, in *Miranda v. City of Cornelius,* 429 F.3d 858 (9th Cir. 2005), the court struck down the application of an ordinance that allowed police to tow and impound the car of any person reasonably believed to have operated a vehicle without a license.  An officer towed Miranda's vehicle from her driveway because he believed Miranda lacked a license.  The government did not dispute that a seizure had occurred but argued that the seizure was reasonable because it was authorized by the ordinance.  The court disagreed, explaining that a "city ordinance . . . does not, in and of itself, determine the reasonableness of the seizure under the Fourth Amendment."  *Id.* at 864.  Instead, the Fourth Amendment requires a careful

19

balancing of harms. Looking at the facts, the court noted that the government's stated interest in preventing vehicles from "impeding traffic or threatening public safety and convenience" could not justify the seizure. The car was already safely in Miranda's driveway and was causing no threat to the public. The fact that Miranda may drive the car improperly in the future was also not sufficient to justify a seizure. *Id.* at 865.

Just as in *Miranda*, Canton invokes its power to abate nuisances to justify its interference with F.P.'s possessory interest in the trees, while conceding that tree removal does not, of itself, constitute a nuisance at common law and that it has no evidence that tree removal from F.P.'s property has caused an actual nuisance or injured anyone. Dep. of L. Thurston, 16:20-25; 17:1-25; 18:1-7. By contrast, the nature and quality of the intrusion is significant. The Tree Ordinance not only interferes with F.P.'s ability to develop its property (or even access the clogged drain that was flooding it and its neighbor) but also its right to exclude unwanted objects— "one of the most essential sticks in the bundle of rights that are commonly characterized as property." *Loretto*, 458 U.S. at 433. Canton is thus left with little more to justify its seizure of F.P.'s property than an abstract desire to populate the Township with trees and to enforce its Tree Ordinance. Dep. of L. Thurston, 13:16-25; 14:1-13.

20

**C. The interference with F.P.'s property rights is unreasonable because it is uncompensated**

Outside of narrow circumstances, such as the existence of exigent circumstances, or the seizure of a public nuisance, contraband, or evidence of a crime, an uncompensated seizure of private property is deemed *per se* unreasonable. *See Bloem v. Unknown Dep't of the Interior Employees*, 920 F.Supp.2d 154, 162–63 (D.D.C. 2013) (seizure and destruction violated Fourth Amendment where property was not "abandoned, a public nuisance, contraband, or evidence of a crime.") Regardless of its intentions, the government may not take a person's property without paying for it. *See Mahon*, 260 U.S. at 416 ("a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change.").

Here, Canton concedes that it does not intend to compensate F.P. for its interference with F.P.'s property rights. Dep. of J. Goulet at 26:3-17. Indeed, Canton has never compensated property owners for its restrictions under the Tree Ordinance and it lacks any mechanism by which compensation could be sought. *Id*. Accordingly, both on its face and as applied, any interference with property rights under the Tree Ordinance is uncompensated and therefore *per se* unreasonable.

21

### III.   CANTON'S   TREE   ORDINANCE   CONSTITUTES   AN   UNCONSTITUTIONAL   CONDITION   ON   THE   USE   OF   PROPERTY

The Tree Ordinance is also unconstitutional because it places unconstitutional conditions on the use of private property by requiring F.P. to either plant trees or pay fees as mitigation well in excess of any injury caused by F.P.'s removal of its own trees.  Under *Nollan v. California Coastal Comm'n*, 483 U.S. 825 (1987), and *Dolan v. City of Tigard*, 512 U. S. 374 (1994), "a unit of government may not condition the approval of a land-use permit on the owner's relinquishment of a portion of his property unless there is a 'nexus' and 'rough proportionality' between the government's demand and the effects of the proposed land use."  *See Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 599 (2013).  This analysis may not be made in the abstract, but must be based on an individualized assessment of the facts on the ground, both as to the existence of a sufficient nexus and as to rough proportionality.  *See Dolan*, 512 U.S. at 391 (the government "must make some sort of individualized determination that the required dedication is related both in nature [i.e., nexus] and extent [i.e., rough proportionality] to the impact of the proposed development.")

In *Dolan,* the city required the plaintiff to construct a bike path on its property as a condition of granting a construction permit.  *Id.* at 380.  The city argued that this mitigation requirement was proper because the proposed construction would

22

increase traffic and parking problems and the bike path could offset some of those problems. *Id*. at 381-82. The city produced evidence that the proposed construction would increase traffic, but provided no site-specific evidence as to the actual effect that the proposed bike-path would have on the traffic in the area. *Id.* at 395. Instead, the city's official findings relied on the common knowledge that, in general, a bike path "could offset some of the traffic demand . . . and lessen the increase in traffic congestion." *Id*. The Court rejected this abstract approach to exactions, noting that "findings of fact that the bicycle pathway system '*could* offset some of the traffic demand' is a far cry from a finding that the bicycle pathway system *will*, or is *likely* to, offset some of the traffic demand." *Id*. at 395-96. As the Court explained, "the city must make some effort to quantify its findings in support of the dedication for the pedestrian/bicycle pathway beyond the conclusory statement that it could offset some of the traffic demand generated." *Id*. Because the city failed to engage in this site-specific analysis, the proposed mitigation requirement was unconstitutional. *Id*.

Here, Canton claims that tree removal has a nexus to public benefits like air quality and flood control, and that its mitigation requirements are roughly proportional to that interest. But, as in *Dolan*, Canton does not base its claim of "rough proportionality" on any site-specific analysis of the impacts of tree removal on F.P.'s property. Dep. of L. Thurston 84:1-8. Indeed, the type of site-specific analysis required by *Dolan,* is precluded by the Tree Ordinance on its face. Under

the ordinance, property owners *shall* pay market value of any removed tree into the tree fund or plant a pre-set number of replacement trees, regardless of its impact on neighbors. Dep. of J. Goulet, 16:13-25, 17:1-25; 18:1-6[6] Moreover, even if site specific analysis were permitted under the Tree Ordinance—it is not—the proposed mitigation in this case would still fail under *Dolan*. Canton admits that it has "no evidence" that F.P. removal of trees has impacted any neighbors, much less that the removal has caused injuries sufficient to justify Canton's proposed mitigation payments. Dep. of L. Thurston, at 16:20-25; 17:1-25; 18:1-7.

While this Court has not yet had the opportunity to apply *Nolan* and *Dolan* to a tree ordinance, courts in states as diverse as Texas and New Jersey have. Those cases are instructive. In *Mira Mar Dev. Corp. v. City of Coppell*, 421 S.W.3d 74, 95-96 (Tex. App—Dallas, 2013), the court struck down the application of a tree ordinance that required developers removing a tree to pay a "mitigation fee" that would be used to plant replacement trees elsewhere. As in this case, the city argued that the mitigation requirement would "protect trees and promote urban forestation for the many benefits trees provide…including shade and cooling, reduction of noise and glare, protection of soils, providing of ecosystems, and increasing property values." *Id*. But the City presented no evidence of the actual impact of removing

---

[6] This is particularly odd, because Canton concedes that the impact of tree removal will vary based on the type of tree removed and its location. Dep. of L. Thurston 80:21-25; 81:1-3.

trees from the relevant property and no comparison of that impact with the actual benefit of planting replacement trees on public property. *Id*. The court held that with "no evidence of any projected impact caused by the removal of trees during the development, the City did not raise a genuine issue of material fact that any amount of tree retribution fees would be roughly proportional." *Id*. The Court therefore granted summary judgment in favor of the property owner.

A similar requirement was struck down in New Jersey. *New Jersey Shore Builders Ass'n v. Township of Jackson*, 2007 N.J. Super. Unpub. LEXIS 2987, *13-14 (2007). In that case, the ordinance required individuals removing trees to pay into a tree fund to plant replacement trees elsewhere. The Township of Jackson argued that this tree replacement regime served to mitigate the effects of tree removal on things like soil erosion and diminished property values for adjacent properties. *Id*. But the Township did not engage in any site specific analysis of the actual effects of tree removal from the property in question. Instead, the Township argued that because trees *generally* can provide erosion control benefits, requiring payment for replacement trees elsewhere had a significant nexus to damage caused to the public by tree removal on the private property at issue. *Id*. at 7-8. The court disagreed, noting that "the payment of a fee to plant new trees on other public land does not in any way address the objective of ameliorating the negative effects of removing trees on [the] private property [at issue]." *Id*. at 13-14. The ordinance was therefore

25

unconstitutional.  Canton's Tree Ordinance fails for the same reasons—*i.e.*, it does not allow the site-specific analysis mandated by *Dolan*.

### IV.    CANTON'S TREE ORDINANCE REQUIRES THE IMPOSITION OF UNCONSTITUTIONALLY EXCESSIVE FINES.

Finally, the Tree Ordinance is unconstitutional and should be enjoined because it mandates fines that are grossly disproportionate to any public harm caused by tree removal.  The excessive fines clause of the Eighth Amendment "limits the government's power to extract payments, whether in cash or in kind, 'as punishment for some offense.'"  *Timbs v. Indiana*, 139 S.Ct. 682, 687 (2019).  The Eighth Amendment is violated when there is a: 1) mandatory payment "in cash or in kind" to the government (*id.*); 2) the required payment is intended, at least in part, to serve "either retributive or deterrent purposes" (*Austin v. United States*, 509 U.S. 602, 610, (1993)); and 3) the payment is not proportional to the violation allegedly committed. *United States v. Bajakajian*, 524 U.S. 321, 334 (1998).  That burden is met here.

First, the Tree Ordinance requires a mandatory payment in "cash or in kind" to the government.  The Tree Ordinance requires that F.P. pay either thousands of dollars or plant over 100-trees as a penalty for removing trees on its own property. (Dep. of J. Goulet, 16:13-25, 17:1-25; 18:1-6).  These payments are mandatory on the face of the ordinance (Canton Code of Ordinances, Art. 5A.08) and are being affirmatively sought by Canton in this case.  ECF 13, p. 15.

Second, these payments are designed, at least in part, for "retributive or deterrent purposes." *See Austin v. United States*, 509 U.S. at 610.  At deposition, Canton's representative conceded that the purpose of requiring after-the-fact payments was to ensure compliance with the Tree Ordinance and to deter individuals from removing trees.  Dep. of J. Goulet, 38:23-25; 39:1-4 (compliance); *id.*, at 13:3-11 (deterrence).  The required payments are therefore punitive in nature.  *See WCI, Inc. v. Ohio Dep't of Pub. Safety*, No. 18-3962, 2019 U.S. App. LEXIS 15527, at *18 (6th Cir. May 24, 2019) ("even if only intended partially as a punishment, and partially for other reasons—the protections of the Eighth Amendment apply.")

Finally, the fines sought in this case are grossly disproportional to any public harm F.P. may have caused by removing trees from its own property.  "The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality."  *Bajakajian*, 524 U.S. at 334.  The "amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish."  *United States v. Madison*, 226 Fed. Appx. 535, 548 (6th Cir. 2011).

In determining proportionality, courts look at several factors—two of which are dispositive here.  First, courts look at the actual "harm that respondent caused." *Bajakajian*, 524 U.S. 321.  In *Bajakajian*, the Court held that a seizure of $ 357,144 was "grossly disproportional" to the crime of not reporting the amount of currency leaving the country to federal authorities, because "the harm that respondent caused

27

was …minimal." *Id*. at 339. As the Court explained, the respondent's failure "to report his currency affected only one party, the Government, and in a relatively minor way." *Id*. There "was no fraud on the United States, and respondent caused no loss to the public fisc." *Id*. Given these minimal injuries, the forfeiture of thousands of dollars was excessive. *Id*.

Second, courts compare the civil fine to the criminal penalties for the same offense. For example, in *Bajakajian,* the court compared the $357,144 seizure with the criminal penalty for the same offense, which was $5,000. *Id*. The Supreme Court held that the civil penalty was grossly disproportional because it was "many orders of magnitude" greater than the criminal penalty. *Id*. at 340.

The fines assessed under the Tree Ordinance in this case fail both tests. First, there is no public harm at issue in this case. Canton concedes that removing trees from private property does not, of itself, constitute a nuisance. Dep. of L. Thurston 11:4-16. And Canton concedes that there is no evidence that the tree removal in this case harmed or otherwise injure F.P.'s neighbors. *Id*. at 16:20-25; 17:1-25; 18:1-7. The only harm that Canton argues in this case is that violation of a zoning ordinance is a *per se* public injury. *Id.* at 13:16-25; 14:1-13. But such an abstract injury cannot justify $47,898 in fines. *See Bajakajian*, 524 U.S. at 339 (government's inherent offense in having its laws violated not sufficient).

Second, the fine in this case is grossly excessive in comparison to the maximum criminal penalties available for the same offense.  In *Bajakajian*, a forfeiture of $ 357,144 was considered "grossly" excessive because it was seventy times larger than the maximum criminal penalty.  *Bajakajian*, 524 U.S. at 339.  Here, the maximum criminal penalty for violating the Tree Ordinance is $500, but the civil fines sought against F.P. under that same ordinance for removal of only a fraction of trees on the property are $47,898 - nearly 100-times greater than the maximum criminal penalty.  Accordingly, such a level of disproportionality cannot pass under *Bajakajian*.

## CONCLUSION

For the foregoing reasons, this Court should grant summary judgment in F.P.'s favor, declare the Tree Ordinance unconstitutional, and enjoin its enforcement against F.P.

Respectfully submitted,

ROBERT HENNEKE
Texas Bar No. 24046058
rhenneke@texaspolicy.com
THEODORE HADZI-ANTICH
CA Bar No. 264663
tha@texaspolicy.com
CHANCE WELDON
Texas Bar No. 24076767
cweldon@texaspolicy.com
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701

29

Telephone:   (512) 472-2700
Facsimile:    (512) 472-2728

MICHAEL J. PATTWELL (P72419)
mpattwell@clarkhill.com
CLARK HILL PLC
212 E. Cesar Chavez Avenue
Lansing, Michigan 48906
Telephone:   (517) 318-3043
Facsimile:    (517) 318-3082


By: _____*/s/Chance Weldon*_____
       CHANCE WELDON

30

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2019, I caused electronic filing of the foregoing document with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all properly registered counsel.

*/s/Chance Weldon*
CHANCE WELDON

31