**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**F.P. DEVELOPMENT, LLC,**

Plaintiff/Counter Defendant

**Case No. 18-13690**

**-v-**

**CHARTER TOWNSHIP OF CANTON,**

Defendant.
_____________________________________/

**MOTION HEARING**

BEFORE THE HONORABLE **GEORGE CARAM STEEH**
United States District Judge
Theodore Levin United States Courthouse
231 West Lafayette Boulevard
Detroit, Michigan
January 23, 2020

APPEARANCES:

FOR THE PLAINTIFF: **CHANCE DEAN WELDON**
Texas Public Policy Foundation
901 Congress Avenue
Austin, TX 78701

FOR THE DEFENDANT: **ANNE MCCLOREY MCLAUGHLIN**
Rosati, Schultz, Joppich & Amtsbuechler, P.C.
27555 Executive Drive, Suite 250
Farmington Hills, MI 48331

**KRISTIN B. KOLB**
Charter Township of Canton
1150 S. Canton Center Road
Canton, MI 48188

<u>**To Obtain a Certified Transcript Contact:**</u>
Christin E. Russell
FCRR, RDR, CRR, CSR - (248) 420-2720
Proceedings produced by mechanical stenography.
Transcript produced by computer-aided Transcription.

TABLE OF CONTENTS


| Motion Hearing | Page |
|---|---|
| Argument by Mr. Weldon | 5 |
| Argument by Ms. Mclaughlin | 19 |
| Rebuttal by Mr. Weldon | 30 |
| Sur-Rebuttal by Ms. Mclaughlin | 35 |

EXHIBITS:

(None Offered.)

| | |
|---|---|
| CERTIFICATE OF COURT REPORTER | 37 |

Detroit, Michigan
January 23, 2020
10:05 a.m.

* * *

(Call to Order of the Court; all parties present.)

THE CLERK: The Court calls case No. 18-13690, F.P. Development vs. Canton Township.

THE COURT: Good morning.

MS. MCLAUGHLIN: Good morning, your Honor.

MR. WELDON: Good morning, your Honor.

THE COURT: You can all take a seat.

Thank you, Christin, for helping out.

COURT REPORTER: You're welcome.

THE COURT: Okay. So are we still waiting for?

MS. MCLAUGHLIN: My co-counsel is running just a little behind, your Honor. And there's also an issue with the Lafayette side entry of the building.

THE COURT: Oh, really.

MS. MCLAUGHLIN: Yeah. The x-ray machine apparently is down, so only the Fort side is open to the public. So I don't know what that's going -- I did tell her, but I know she and I usually park on that side of the building.

THE COURT: Was she going to be doing some of the arguing?

MS. MCLAUGHLIN: No. No. But she is the Township's

corporation counsel, so she wanted to be here.

THE COURT: We can wait a little bit.

MS. MCLAUGHLIN: Okay. Thank you.

THE COURT: Okay. So we have cross motions in this matter?

MS. MCLAUGHLIN: Yes.

MR. WELDON: Yes, your Honor.

THE COURT: And in what order do you expect to address the issues?

MR. WELDON: I think that Plaintiffs would go first. We presented the first motion for summary judgment. We filed the lawsuit, so.

THE COURT: All right. Do you have a problem with that?

MS. MCLAUGHLIN: Not at all.

THE COURT: All right.

MS. MCLAUGHLIN: Essentially the arguments are the same I think. So they are not -- it's basically two copies of the same briefs, not entirely, but the briefs are very similar, so.

THE COURT: Yes.

MS. MCLAUGHLIN: Case law is, is what it is, so.

THE COURT: Yes. Okay.

(Brief pause.)

THE COURT: Why don't you come up and sit with your --

is this?

MS. MCLAUGHLIN: Yes, your Honor.

THE COURT: Yeah. Okay.

MS. KOLB: Thank you, Judge.

THE COURT: Okay.

MS. KOLB: Good morning.

THE COURT: All right. I think we're -- do you need a minute?

MS. KOLB: No. I'm good, sir.

THE COURT: All right. Counsel? Mr. Weldon, right?

MR. WELDON: Yes, your Honor.

THE COURT: Okay.

MR. WELDON: Chance Weldon for the plaintiffs, F.P. Development. May it please this Court.

This case, as you're aware, involves a constitutional challenge to the Township of Canton's Tree Preservation Ordinance. And we're here today on cross motions only on those constitutional claims.

Now, in a nutshell, we're here today because my client removed a strip of vegetation from its property in order to access a ditch that was clogged and causing flooding. As a result of this property maintenance on an industrially-zoned property, my client is currently being charged 48 -- approximately $48,000 in penalties under a local ordinance that requires private property owners to compensate the government

for removing their own trees from their own private property regardless of the impact that may have on their neighbors or others.

Now, as we lay out in the briefs, this violates the Constitution both on its face and as applied in this case in four separate ways. And if this Court were to rule for our client on any one of those claims, the remedy would be the same. It would be a declaration that the challenged portion of the Tree Ordinance is unconstitutional, and an injunction preventing the enforcement against my client in this case.

Now, I'd like to start today with the unconstitutional conditions claim. And the reason I'd like to start there is because, at a minimum, Canton agrees that at some point, the Tree Ordinance requires mitigation for the removal of regulated trees. And what the Supreme Court held in *Dolan v. Tigard*, is that whenever the Government requires mitigation for the use of property, that mitigation has to meet three criteria:

First, the mitigation has to have a significant nexus to a legitimate government interest. Second, the mitigation has to be roughly proportional to the proper uses impact on that interest. And most importantly, when determining rough proportionality, there has to be -- they have to engage in an individualized assessment both as to the impact on the legitimate government interest, and as to the proposed mitigations's ability to mitigate that impact in a roughly

proportional way.

And in this case, not only was there no site specific individualized analysis of impact or mitigation, the tree ordinance on its face doesn't allow that sort of site specific analysis to take place. Instead, just like the ordinance that was struck down in Texas in the *Mira Mar* case, mitigation is based solely on the number and size of trees removed from the property.

Now, sort of at the eleventh hour, Canton has come in and argued in its reply brief that there are other portions of the ordinance that do allow some sort of site specific analysis. For example, Canton will come out to the property to make sure that the vegetation that was removed is a regulated tree, for example, or in order to get a permit to remove any trees in many cases, you have to prove that the removal was necessary. And Canton engages in some sort of site specific analysis to determine whether or not tree removal would be permitted at all. But that's irrelevant to the *Dolan* claims in this case, because *Dolan* is concerned with the site specific analysis with regard to impact and mitigation. And both the ordinance on its face and the testimony in this case make clear that mitigation is based solely on the number of trees removed and the size of the trees that are removed, which is indistinguishable from what was taking place in the *Mira Mar* case in Texas.

Now, the second issue in this case is the takings issue, your Honor. And I'd like to discuss today just the two *per se* takings claims that we raise in this case. Because we all know how *Penn Central* works with the as applied taking claims. So I want to just talk about the two *per se* takings claims.

And the best way to conceptualize these two claims is to look at the property interest that's at issue. For our *per se* taking claim under *Horne*, the property interest at issue is the property interest in the trees themselves, which are a severable interest in property under Michigan law, and severable interest for the purpose of takings analysis.

In *Horne vs. Department of Agriculture*, the United States Supreme Court says that whenever a government regulation deprives a property owner of the ability to alienate or use or sell a severable interest in property, that's a *per se* taking, regardless of whether or not the underlying property itself maintains any independent value, and regardless of the public interest that is served by that taking. Those things may go to the remedy as far as if we were seeking damages, which we're not in this case, but as to whether or not a taking has occurred, the fact that the amount of value left in the underlying property is irrelevant.

Now, in the *Horne* case, the government required the property owner in this case to set aside a certain percentage

of his raisin crop in order to maintain the raisins that were in the national market. And what the court said is those set aside raisins, under the ordinance -- I'm sorry. Sorry, your Honor, to go back for just a second. In those set-aside raisins, the way that the regulation worked is if, if the farmer used any of those raisins, or sold any of those raisins, then the owner had to compensate the government the fair market value of those raisins. And that's exactly what the tree ordinance does in this case, and exactly what the tree ordinance did to my client in this case, which is the ordinance forbids him from chopping down or selling or utilizing his trees unless he replaces those trees or compensates the government the fair market value of those trees.

Now, in *Horne*, the farmer in this case, decided to sell some of the raisins. And as a result, the federal government tried to fine him the fair market value, tried to collect the fair market value of the raisins sold.

Here, my client did something very similar. He attempted to sell a portion of those removed trees in order to get his ditch cleaned, right? To trade them to get his ditch cleaned. And Canton is doing the exact same thing. It's seeking the "fair market value" of those trees for my client. That is a *per se* taking subject to injunction. Just like the fine was enjoined in *Horne*, it can be enjoined in this case as well.

The second *per se* taking deals not with the trees themselves but the property underlying the trees, and this is our *Loretto* claim.

In *Loretto*, what the Court said is when a regulation forbids an owner from removing an unwanted object from the property, that is a *per se* taking of the property underneath that object, again, regardless how small the intrusion and regardless what the public interest that is served.

Now, in *Loretto*, the issue was the property owner had purchased a property that had a pre-existing cable box on the property, and she wanted to have that cable box removed, but regulations prevented her from removing the cable box. And the Supreme Court said that's a *per se* taking of that 12-inch space where the cable box resided.

Here, the ordinance, again, forbids my client without penalty from removing trees from his property. Now, those trees are a far larger intrusion than that 12-inch cable box. And as those trees remain on the property, in fact, they get larger. So the intrusion, in fact, grows over time. And that's a *per se* taking regardless of the public interest served.

So the next claim that I'd like to discuss is the Fourth Amendment seizure claim. And what the courts have held is that a land use regulation is a Fourth Amendment seizure if it's a meaningful interference with private property rights

that is either unjustified or uncompensated.

Now, this meets both of those criteria, because it is a meaningful interference with my client's ability to utilize his property and to fell trees on the property, to clear the property, to abate nuisance based on conditions on the property in this case, and it's neither justified nor compensated. Canton admits that there is no evidence that the tree removal in this case injured anyone. As a matter of fact, the removal in this case, the only evidence in the record suggests that removal in the case was good for the property and probably good for my client's neighbors. And there is no question in this case that it's uncompensated. In fact, they are seeking compensation from my client.

And what the courts have held with these seizure claims is it requires a balancing from this Court. This Court has to look at the government interest at issue, and balance that against the interference with private property rights.

THE COURT: Under the *Penn Central*?

MR. WELDON: No. That would be the takings claim. Under the Fourth Amendment seizure claim, there's a similar balancing that takes place. But again, the question under *Penn Central* is whether or not it amounts to a taking, a deprivation of the property. And under the Fourth Amendment, the question is whether or not it's a reasonable interference with private property rights. So it's sort of a reasonableness test where

you balance the public harm versus the interference with private property rights.

Now, what's interesting about the way that this case has been briefed up is Canton doesn't really argue that it's not an interference with property rights or they don't spend any time in the briefing arguing that it's, you know, justified or compensated. Instead, they raise two claims why the Fourth Amendment doesn't apply at all. And both of those claims have been precluded by precedent.

Their two arguments are, first, that the Fourth Amendment doesn't apply to land use regulations, it only applies to evidence collection in the criminal context. That's simply not true. If you take a look at the *Soldal* case from the United States Supreme Court, it is explicitly rejected in that case. If you take a look at the *James Daniel Good* case, both of those cases, the Supreme Court rejected the idea that the Fourth Amendment only applies to in the context of evidence collection. It applies to land use regulations as well. The question is not the purpose of the seizure, but whether or not a meaningful interference with property rights has taken place.

Their second argument --

THE COURT: There's some Supreme Court decision that indicated open fields have a negligible Fourth Amendment --

MR. WELDON: With regard, with regard to searches, your Honor, so that the open fields doctrine applies to

searches under the Fourth Amendment. But the open fields doctrine has never been applied to seizures. And if you take a look at, for example, the *Presley* case out of the Fourth, out of the Fourth Circuit, has a very extended conversation about this sort of, the way that these doctrines play out. And that was an ordinance that forbid the client from placing a fence on her property. And the Court held that that was a Fourth Amendment seizure for Fourth Amendment purposes.

You see a similar discussion in the *Severance* case, which dealt with an easement on the property for a beachfront home. And again, that was held to be, at least at the motion to dismiss stage, a viable seizure claim out of the Fourth Amendment.

The second argument that they raise is this unique argument that my client can effectively only raise one constitutional claim at a time; that my client is not permitted to bring a seizure claim because my client also bring takings claims. And again, this was, this was expressly rejected in the *Soldal* case. There's a great discussion of it from the Fourth Circuit again in *Presley*, there's a great discussion in the Fifth Circuit in the *Severance* case, and an unpublished opinion in the appendix of the Sixth Circuit adopted both *Severance* and *Presley* as good law in the Sixth Circuit as well. So this idea my client has to pick and choose which constitutional claims that he can bring arising out of the same

fact is just wholly precluded by law.

And then, finally, I'd like to address the Eighth Amendment claims in this case. Even if the ordinance in this case were otherwise constitutional, the penalties mandated by the ordinance and the penalties being sought in this case violate the excessive fines clause of the Eighth Amendment. Now, the courts have held that the excessive fine clause applies to any payment in cash or in kind, that's designed at least in part for deterrence or compliance purposes.

Now, in this case, there's no -- the testimony in this case makes clear that the purpose of these after-the-fact tree payments into the tree fund, are to do two things, to "ensure compliance with the ordinance and to encourage people not to remove trees from their property." So it is deterrence and compliance.

So the Eighth Amendment applies in this case. So the only question is whether or not a $48,000 penalty for removing your own vegetation from your own private property to abate nuisance conditions is excessive. And the Supreme Court has given a couple of factors that you can take a look at, either of which would be dispositive in this case to determine whether or not a fine is excessive. The first is you compare the actual harm caused by the activity, all right, and determine whether or not the penalty is excessive given that harm.

And here, you have a situation where Canton admits

there is no evidence that the removal harmed anyone. You're talking about removing vegetation from an industrially-zoned property on an area of the property that the public can't even see. And as a result, they are seeking $48,000 in penalties. So that's excessive based on just the harm analysis. The second thing the Court said you can take a look at is when you look at the maximum criminal penalty for an offense, and you compare it to the civil penalty that's being sought in the case, if you take a look at -- I'm going to butcher the pronunciation of this case, but it's the, let's see, *Bajakajian* -- *Bajakajian* case, in that case, the court held that a penalty that was 70 times larger than the maximum criminal penalty in that case was grossly excessive. If you take a look at the footnotes in that case, they said even something 30 times the maximum criminal penalty in the case could be grossly excessive. Here, the maximum criminal penalty, if you take a look at Canton's briefing and the ordinance in this case is $500. They are seeking something that's approximately 100 times the maximum criminal penalty in this case. That is a grossly excessive penalty for removing your own trees from your own private property which, until the tree ordinance was enacted, was a common law right.

So with that, I'd like to just address two arguments and then, of course, the ripeness arguments that were put forward in this case just very briefly, your Honor.

One, is that Canton in their briefing brings up, a lot, that there is an offset in this case allegedly that my client could have removed 25 percent of his trees before this ordinance kicked in. A couple of things on that. One, that's not true with regard to landmark trees, which are trees over a certain size. It doesn't kick in for those.

And two, it's wholly irrelevant because if you look at all of the cases that we cite, whether that be the takings claims, whether that be *Nollan*, *Dolan* for the unconstitutional claims, whether that be the seizure claims, in all of those cases, the plaintiffs were allowed to use far more than 25 percent of their property. In the *Loretto* taking claims, she was able to use all of her property except, you know, a 12 or 15-inch box. That didn't mean that it wasn't a taking. In *Dolan*, they were able to use far more of their property, they only had to set aside a bicycle path. Yet, that didn't mean that that wasn't an unconstitutional condition on the use of property.

Moreover, in this case, if you look at the penalties they are seeking in this case from my client, it doesn't appear that they've applied that 25 percent offset. Now, they may have, and it may just be unclear from the record, but it doesn't appear that, that to be the case.

The other thing I'd like to talk about, just very briefly, is the ripeness argument that was raised in their

motion to dismiss. There is no question with regard to jurisdictional ripeness in this case. Canton does not dispute the fact that the ordinance applies to my client on its face; that they've applied the ordinance to my client by issuing a notice of violation; and that they're currently seeking to apply this ordinance in this court seeking $48,000 in their counterclaims. So as a jurisdictional matter, the injuries in this case are not speculative. So for Article III purposes, the case is ripe.

Instead, what Canton has done is raised a prudential ripeness argument under *Williamson County* with regard to two of our claims in this case. This is the as applied takings and as applied seizure claims. But even with regard to those two claims, the prudential requirements of *Williamson County* do not apply in this case for two reasons. First, in *Palazzolo*, the Supreme Court said that the prudential ripeness requirements of *Williamson County* don't apply when the application of the ordinance is reasonably clear. The whole purpose of the prudential requirement of *Williamson County* is that land use regulations are often vague, they often allow a great deal of discretion with the land use authorities and, therefore, as a prudential matter, courts will require property owners in certain as applied takings claims to apply for a permit first, and have that denied so the Court can be sure how the ordinance applies before it does the takings analysis. Okay.

The Court in *Palazzola* held when the ordinance, either on its face, or because of the government's activity in the case, if it becomes reasonably clear how the ordinance applies to that particular piece of property, the prudential requirement that they apply for a permit doesn't apply. You don't have to apply for a permit for its own sake.

Here, the ordinance is reasonably clear on its face. In fact, it's crystal clear on its face. If you remove regulated trees, you shall pay into the Tree Fund or plant replacement trees. It's clear on its face. Second, if there was any ambiguity whatsoever, that ambiguity has been removed by the testimony in this case by the fact that they issued a notice of violation against my client for violating the ordinance in this case. And based on the counterclaims in this case, where they have stated with specificity both the number and type of trees they allege have been removed and the specific amount of compensation that they are seeking from my client. It's beyond reasonably clear. It's crystal clear how the ordinance applies. So the prudential ripeness requirement doesn't apply in this case.

The second reason it doesn't apply is if you take a look at the *Horne* case, it doesn't apply when the plaintiff is simply trying to block the implementation of a penalty or a fine. In *Horne*, which we discussed earlier, the raisin farmer hadn't gone through the federal administrative process yet so

they argued his claims weren't ripe. And what the court said in that case is, look, once the Government is trying to impose a financial penalty, you can bring a constitutional counterclaim, which we've done in this case. Okay. That's not just, you know, *Horne vs. Department of Agriculture*, that's *Mulberry vs. Madison*. Once they've invoked the jurisdiction of this Court to enforce their ordinance, the constitutionality of the ordinance is in front of the Court and we can make constitutional counterclaims.

So with that, your Honor, unless there are any other questions, I'd love to just have a moment to do some rebuttal if anything new gets raised here.

THE COURT: Sure.

MR. WELDON: Thank you, your Honor.

THE COURT: Thank you.

Ms. McLaughlin?

MS. MCLAUGHLIN: Thank you, your Honor.

Well, your Honor, the first argument I think I need to address is the plaintiff's characterization of the fees associated with this ordinance and its implementation as a fine or as a penalty. That is simply not the case. Even as Mr. Weldon noted in his arguments, the fine for a misdemeanor violation of this ordinance is a $500 fee or 90 days in jail. However, the entity, the plaintiff here, and the entity with whom the ordinance violation was charged is a corporation, and

it's quite impossible to put a corporation in jail. So there is no penalty here.

The provisions of this ordinance and the compensation -- I shouldn't say the compensation. I don't mean the compensation -- the mitigation fees that the ordinance provides are not for the purposes of compensating the Township. They are for the purpose of mitigating the losses that are attenuated or that come with the violation.

The ordinance here applies to the tree removals and the, although counsel argued that there is no requirement to apply for a permit for the sake of applying for a permit with respect to the ripeness argument, in this case, your Honor, had the plaintiff applied for the permit, we wouldn't be here.

There was a violation of the ordinance at the very outset of the activity on this property when they failed to provide notice to the Township that they were intending to remove trees, failed to provide a tree inventory in the, as required by the ordinance that would have allowed the Township to visit the property to determine what trees the plaintiff wanted to remove, what provisions of the ordinance applied, how the review standards applied that are expressly set forth in the ordinance, and then come to a determination as to what regulated trees were being removed, what landmark trees were being removed. And then, based on that calculation, and including the 25 percent exemption, come to a decision on how

the mitigation would take place. Because Plaintiff did not give the Township that opportunity, the only remedy at this point that the Township has is to seek the mitigation fees because Plaintiff -- and Plaintiff has never indicated a willingness to replace those trees either on site or off site.

It's important here, your Honor, because as we've alleged in our counterclaim, the violation of a zoning ordinance that regulates the use of property is a nuisance *per se* under Michigan law. That means we don't have to prove the circumstances under which it occurred. We don't have to prove the effect on any other property or any other issue or impact on this property. All we have to do is prove that there was a violation of an ordinance by using a land in violation of the zoning ordinance. And under the Michigan Zoning Enabling Act, MCL 125.3407, that statute makes such a violation a nuisance *per se*. Canton Township's ordinance mimics that language and also provides that it's a nuisance *per se*.

How do you mitigate a nuisance *per se*, Judge? Well, you try to return the property back to the conditions that existed before the nuisance occurred. If this were, for example, someone who had built a building in the wrong place without permits in violation of the zoning ordinance, they could order the building to be razed, or they could require the property owner to come back, apply for a permit, and see if that issue couldn't be resolved that way.

But in this case, you can't replant trees in the same place and in the -- under the same conditions that they previously existed. So the Township is constrained here by requiring either the remedies under the ordinance, and that is for the violation. We haven't charged the plaintiff with a misdemeanor violation here.

So it's important to note that, for purposes of this argument, Judge, because the nuisance *per se* recognizes that in many instances, there is not going to be a specific identifiable remedy. How do you remedy a speeding ticket, for example? There's no "harm" allegedly to anybody else, potential harm but not specific harm just by the virtue of speeding. So there is a fine assessed in, or a civil infraction fee assessed there in Michigan. But when you have land and you have these kinds of conditions that are created without input by the local municipality under its ordinances that are expressly directed to regulating this type of activity, then you are tying the hands behind their back as to how they are supposed to remedy this violation.

So with respect to the unconstitutional conditions argument that counsel started with under *Dolan v. Tigard*, there is an essential nexus here, because the ordinance itself expressly sets forth the review standards under which regulated trees are to be determined, whether they are -- they can be removed without penalty, whether they can be removed -- I

shouldn't say without penalty, but without some mitigation, or whether they can be removed without -- under these specific terms of the ordinance, replacing on site, replacing off site on another property, or paying into the Tree Fund.

And this isn't compensation to the Township, your Honor. This is for the purpose of the Township being able to replace trees itself. That particular type of remedy is recognized in many other ordinances and many other cases, specifically that we cited in our brief, *Shoemaker vs. The City of Howell*, where a person violated the ordinance, the township had to take remedial action and then charge the plaintiff the cost of doing so.

In this case, the essential nexus is that there is a cost to replacement of that tree. If the plaintiff decided it didn't want to undertake that cost by putting the trees on its own site or somewhere else, then it would take those trees or that cost and give it to the Township so the Township could undertake that activity in order to maintain the type of tree line and canopy that exists.

Canton is a township. It is a fairly rural community in western Wayne County. And it's certainly understandable that that Township doesn't want to become a concrete jungle by maintaining its natural conditions. So there is an essential nexus.

The roughly proportional argument under *Dolan* is also

satisfied here because you're replacing trees on a one-to-one basis. And this is not -- these are not scrub trees. These are not invasive species. These are not unregulated trees. It's only specific trees of a specific size in a specific location that have to be -- that are subject to this permit. And the Township planner testified to this in his deposition. He said we don't tell people how to regulate their property, how to manage their property. It's up to them to decide how they want to manage their property. And then within the confines of the ordinance, then they figure out how to do that. Again, they weren't able to do it in this case because of the situation.

And the individualized assessment that Plaintiff claims did not occur here or is not available under this ordinance is simply not true. There are express review standards. After those review standards are applied, then the permit is issued and then the type of mitigation is decided, if any. And, of course, we don't know what that would have been had the plaintiff gone through this process appropriately because that didn't occur. And the mitigation is after the application of all of those factors. So there is an individualized assessment.

The Township planner also testified that they don't regulate scrub brush. In fact, he said they would still have to get a permit but they wouldn't have to replace those trees

or deposit into the Tree Fund for those types of vegetation. So that's a completely different instance here.

The *Mira Mar* case, your Honor, is also specifically distinguishable here because in that case, there was a developer who went to the township, or the City of Coppell, Texas, and said here is how we want to develop our property. And they said, okay, here you have to pay this fee period, based on one-to-one -- pay a mitigation fee based on the trees removed and replaced. But there is no indication in that case that the ordinance is anywhere similar to the case here, that there is a specific individualized assessment as to what trees are to be removed under what conditions and, what, under those same conditions whether they are subject to the permit and subject to the replacement cost and deposited into the tree fund.

With respect to the *Horne* case, your Honor, it is also, it is also distinguishable. There, there was a set aside of the percentage of the raisin crop in the market so that the market would have a certain number of raisins in it. This, that's not the case here. If Plaintiff doesn't want to keep these trees, he doesn't have to keep the trees. But it's a different type of -- it's kind of a square-peg-round-hole argument here, Judge. It's just not a similar analogous situation. We didn't prevent the plaintiff from removing trees. Obviously, he removed the trees or it removed the trees

itself. And because of the violation, then we have to figure out how to mitigate that under the Michigan law that imposes the requirements of mitigation for nuisance *per se*.

As far as Plaintiff's *Loretto* claim goes, your Honor, a pre-existing cable box is not a tree. The township didn't put the tree there. The cable box at issue was placed there by some man made artificial means, but not through the municipality in that case. And so for them to say you can't remove that, an artificial man made structure from a particular piece of property under *Loretto* was a taking. But *Loretto* doesn't apply in this case because it's not an artificial object placed on the property here.

With respect to Plaintiff's Fourth Amendment seizure case -- claim, Plaintiff has to show that there is a meaningful interference with its property, and did -- cites the case of *Severance vs. Patterson*. *Severance vs. Patterson* has not been adopted as the law in the Sixth Circuit. In fact, a case in this circuit out of the Eastern District of Kentucky has -- state has indicated that it did not believe that that was the law in this circuit. And that, that case, your Honor, is *Scott vs Garrard County Fiscal Court*. It's out of the Eastern District of Kentucky, 2012. The citation I have is 2012 WL 176485. And that court held the same reservation about a Fourth Amendment claim as being separate and independent of a taking claim. But Plaintiff indicated that, or the court,

rather, indicated that it did not believe because a taking claim was available in that instance, that a Fourth Amendment claim was appropriate.

But even so, the *Severance vs. Patterson* court itself recognized that the U.S. Supreme Court had not adopted that approach in the previous case of *U.S. vs. James Daniel Good Real Property*. And it also did not find there was an unreasonable seizure. It merely said that it found that that could be a cause of action in that case. But that's the Fifth Circuit, not the Sixth Circuit.

Additionally, your Honor, with respect to the open fields doctrine, although that does apply to, specifically to searches, I think it would be appropriate to apply it in this case as well, because there is an interest, a government interest in maintaining that green space and the tree forest, for lack of a better term, which is actually the name of the ordinance here. We have the tree preservation or Forest Preservation and Tree Removal Ordinance. So I think the open field doctrine would apply and the Plaintiff has less of a Fourth Amendment interest than it would were this something like a residence.

With respect to the Eighth Amendment claim here, Plaintiff claims that this is an excessive fine because it's penal in nature. But it applies, your Honor, whether the Plaintiff violates the ordinance or not. And that's the

distinction here. In order to get the tree permit, the replacement on site, off site or deposit into the Tree Fund applies when there is an application of the ordinance during the permitting process, so then the Township can decide with the property owner what the appropriate outcome and terms of that permit would be. So it isn't simply deterrence or compliance. It's part of the operation of the ordinance itself. It's not if you violate it, you have to pay us. So the harm that the alleged -- that the plaintiff has alleged didn't happen here, doesn't have to be, as I said, shown because this is a nuisance per se under Michigan law. So it's not a penalty. It's a way of mitigating a condition that was created by the plaintiff in violation of the ordinance.

Your Honor, I'd like to close with a quote from a case from the Maine Supreme Court, a 1908 case, which involved an advisory opinion by the Maine Supreme Court to the Maine State Senate in which the state senate inquired whether prohibiting persons from removing trees from their property would constitute a taking for which they had to be compensated. And in that case, the Maine Supreme Court cited the Massachusetts Supreme Court in *Commonwealth vs. Alger*. That case is 61 Mass. 53, an 1851 case. The In Re: Opinion of the Justices of the Maine Supreme Court case is at 103 ME 506 in 1908. And they quoted the *Alger* case saying:

"We think it a settled principle, growing out of the

nature of well ordered civil society, that every holder of property, however absolute and unqualified may be his title, holds it under the implied liability that his use of it may be so regulated that it shall not be injurious to the equal enjoyment of others having an equal right to enjoyment of their property, nor injurious to the rights of the community."

And in that case, the Maine Supreme Court came to the conclusion that requiring or forbidding people from removing trees from their property would not be a compensable taking under the Fifth Amendment. And I'm quoting from pages 629 of that decision.

"While it might restrict the owner of wild and uncultivated lands in his use of them, might delay his taking some of the product, might defer his anticipated profits and even thereby might cause him some loss of profit, it would nevertheless leave him his lands, their product, and increase untouched and without diminution of title, estate or quantity. He would still have large measure of control and large opportunity to realize values. He might suffer delay, but not deprivation. While the use might be restricted, it would not be appropriated or taken."

And I think that that is although not binding, of course, on this Court, I think it is a simple recognition that

when we live in a society, specifically in a community where there are land regulation laws under the general police powers afforded to the states and to their political subdivisions and municipalities, that there are appropriate cases and appropriate land use regulations that, while they do provide some restriction as to their use, they do not constitute a taking. And I believe that it's appropriate for the Court to keep in mind as it rules in this case.

THE COURT: Thank you very much.

MS. MCLAUGHLIN: Thank you.

MR. WELDON: Very briefly, your Honor. I'd like to start where opposing counsel stopped, which was this Maine case that we haven't seen before. It's important to note that our position in this case has never been that cities can't have tree ordinances. Our position has never been that cities can't do things to prevent injury as that Maine, that quote talked about.

Our position has been that the Supreme Court requires that these ordinances meets certain constitutional criteria. For example, there must be an analysis of the injury caused by tree removal, which there's no evidence of in this case. And then you have to make sure that it's roughly proportional under *Dolan*.

The idea that tree restrictions are subject to constitutional limitations, that's well established, not just

in the *Mira Mar* case, but with regard to all property regulations. Now, with regard to -- I will also note that that case was decided long before any of the Supreme Court cases that I'm citing in this case, so it would be superseded by all of our Supreme Court precedent.

With regard to some of the other things that were raised in this case, the discussion that this is not a fine under the Eighth Amendment, just to start there. Your Honor, if it walks like a duck and quacks like a duck, it's a duck. It's a mandatory payment for the violation of an ordinance. That's fine, according to Supreme Court precedent.

With regard to the statement that we would not be here if my client had not removed trees without a permit, that's simply not true, your Honor. The ordinance on its face, and if you look at 5A.08 of their ordinance, says that the property owner shall pay into the Tree Fund or shall replace trees. These are mandatory restrictions in the ordinance. It's not as if -- we asked at deposition we provide the deposition testimony from their representative, who stated unequivocally that you, you will either pay into the Tree Fund or replace the regulated trees. Full stop. This is non-discretionary. Okay.

Now, I point out things from 5A.05, which you can, for example, there will be some site specific analysis as to whether or not, again, it is a tree, or whether or not you can remove it at all, but once, as they concede, once we are to the

point of mitigation, it's tree for tree, just like in *Mira Mar*.

Now, to point out, just very briefly what they mentioned about the *Mira Mar* case, that the ordinance was not the same, in the briefing they talk a little bit about this, that there was some offsets in their ordinance, like the 25 percent and things like that. There were also offsets if you read the *Mira Mar* case, there are potential offsets they could have applied for. It didn't matter, because at the end of the day, *Dolan* is concerned with the rough proportionality of mitigation. And those, again, once we're in the mitigation framework, it's tree for tree, just like *Mira Mar*, just like what they said today. It's a one-to-one replacement. And that doesn't satisfy *Dolan*.

They site the *Shoemaker* case. The *Shoemaker* case was not a *Dolan* case, your Honor. And again, they sort of misunderstand how the *Dolan*, the unconstitutional conditions claims work, because they talk about, well, this is the cost for us to replace the tree. Well, Canton hasn't lost a tree. The tree belongs to my client. *Dolan* allows cities to mitigate the impact of private property uses, right? Now, the impact of tree removal, and this is very important, varies from property to property and from tree to tree. Canton's representatives concede this. It's the impact, the public impact of a tree removal is going to vary depending on the size of the tree, the species of tree, whether it's on a hill or in a valley, you

know, how much water is being stored on this property. All of those things are going to vary, which is why *Dolan* requires a site specific analysis. And that's the exact site specific analysis that is forbid under this -- forbidden under this tree ordinance.

With regard to the *Horne* taking claim, there is a statement made by opposing counsel that it's different because, you know, in that case, they didn't forbid them from using their -- sorry, that they didn't forbid our client from using his trees. Our client was faced with the exact same choice as the farmer in *Horne*. He could use his property and compensate the government, or he could not use it. That's the same choice that anyone has with regard to any law that has civil penalties, your Honor. You can either comply with what the Government says or you can pay a penalty. That's a Hobson's choice. It's not a choice. And it's not a basis to distinguish *Horne*, because in that case, the farmer did the exact same thing that my client did. He sold the raisins and they came after him for the fair market value. My client sold his trees, they came after him for the fair market value. It's one-to-one.

With regard to *Loretto*, with the artificial versus natural distinction, you'll note they don't cite a single case where that distinction has ever been meaningful. As far as I know, that distinction does not exist.

And then again, also, we note this in the brief but they brought it up today, so I just wanted to redirect the Court. With regard to the *Severance vs. Patterson* claim on the seizure, they point to the *Scott* decision, which is I believe an unpublished district court opinion from 2012 from Kentucky. Well, the Sixth Circuit held in the *Brown* case after *Scott* was decided that *Severance* and *Patterson* were good law in the Sixth Circuit. And we cite the *Brown* case in our briefing. And I mention the *Brown* case earlier. And again, if you look at the direct quote from the *Brown* case, they explicitly rejected citing both *Severance* and *Presley*, the notion that, quote a Fourth Amendment claim is not -- they said, "a Fourth Amendment claim is not subsumed under a takings claim," citing both *Severance* and *Presley*. So the district court case from 2012 that they cite is contrary to Sixth Circuit precedent.

And then finally, also, too, when they discuss the open fields doctrine, they say they have a government interest in open fields which, of course, is not what open fields means. Open fields deals with privacy interest, which is different because it's dealing with the searches, but the Government interest involved is factored into the Fourth Amendment analysis, your Honor. The Fourth Amendment requires you to balance the reasonableness, which, of course, will take into account the Government's interest in trees. But it will also have to take into account the fact that there was no actual

harm in this case and the interference with property rights is significant. Okay? So that's already factored in.

And with that, your Honor, I believe that's all I have. Thank you.

THE COURT: All right. Thank you.

Do you want any further rebuttal?

MS. MCLAUGHLIN: Your Honor, I only want to point the Court to one particular argument. With respect to the ripeness issue that we raised in our motion, which Plaintiff raised in the argument on its motion for summary judgment, and I think that this is an important distinction, Plaintiff here invoked the jurisdiction of this Court. The Township did not originally invoke the jurisdiction of this Court. Because of this Court's rules and the rules that generally apply under the Federal Rules of Civil Procedure, Rule 13, we had to file our counterclaim for the issues related to the violation and the fees associated with that violation under our compulsory counterclaim. And so we did so, or we would be faced with waiving them. We certainly did not want to be faced with waiving any claims that we might have to enforce the ordinance and obtain the remedies provided in the ordinance and under Michigan law. So Plaintiff indicated that they had filed a counterclaim and actually Plaintiff invoked the jurisdiction of this course at the outset -- of this Court at the outset by filing its case here. And, you know, contrary to the argument,

we filed the counterclaim not the plaintiff.

So with that, Judge I think the issues have been thoroughly briefed and argued here. I don't think we need to belabor any other points unless the Court has any questions.

THE COURT: Okay. Thank you.

MS. MCLAUGHLIN: Thank you, your Honor.

THE COURT: Well, I appreciate the presentations made by both sides in the case. And the Court will take the matter under advisement and issue a written opinion as soon as I can get it out.

MS. MCLAUGHLIN: All right.

THE COURT: Thank you.

MS. KOLB: Thank you, Judge.

MS. MCLAUGHLIN: Thank you, your Honor.

THE CLERK: Please rise. Court is adjourned.

(Proceedings concluded, 11:08 a.m.)

CERTIFICATE OF COURT REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____s/Christin E. Russell__
CHRISTIN E. RUSSELL
FCRR, RDR, CRR, CSR-5607
Federal Official Court Reporter

January 23, 2020
Date