UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

F.P. DEVELOPMENT, LLC,

                Plaintiff,             CASE NO. 18-CV-13690

    v.                               HON. GEORGE CARAM STEEH

CHARTER TOWNSHIP OF CANTON,

                Defendant.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (ECF No. 29) AND
GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (ECF No. 26)**

Plaintiff F.P. Development, LLC ("F.P.") has brought this 42 U.S.C. §
1983 action against Defendant Charter Township of Canton ("Canton" or
the "Township") challenging the constitutionality of the Township's Forest
Preservation and Tree Clearing Ordinance (the "Tree Ordinance" or the
"Ordinance"). Plaintiff removed approximately 173 trees from its 24-acre,
industrially-zoned property without a permit in order to access a ditch that
was clogged and causing flooding. The Township has assessed costs
against F.P. in the amount of $47,898 for the removal of trees or requires
that F.P. replace the trees. F.P. alleges that the Tree Ordinance is an
unlawful taking without just compensation on its face and as applied under

the Fifth Amendment, is an unconstitutional seizure in violation of the

Fourth Amendment, and amounts to an excessive fine in violation of the

Eighth Amendment.

Canton has brought a three-count Counter-Complaint against F.P.

seeking $47,898 in damages and alleging violations of the Ordinance for

(1) failure to obtain a tree removal permit, (2) failure to erect a protective

barrier around landmark trees, and (3) failure to observe a setback from

wetland areas and watercourses. Now before the court are the parties'

cross-motions for summary judgment of F.P.'s claims. The Township has

also moved to dismiss for lack of subject matter jurisdiction under Federal

Rule of Civil Procedure 12(b)(1) on the grounds that the as applied takings

claim is allegedly unripe. The Township has also moved for judgment on

the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Because

the court has considered matters outside the pleadings, the court analyzes

Canton's dispositive motion under Federal Rules of Civil Procedure

12(b)(1) and 56 only.

Neither side has addressed the viability of Canton's Counter-

Complaint. Oral argument was heard on January 23, 2020 and informs this

court's decision. For the reasons set forth below, F.P.'s motion for

summary judgment shall be GRANTED IN PART as to its Fifth Amendment

takings claims (Counts I, II, and IV), and DENIED IN PART as to its Fourth Amendment violation claim (Count III) and excessive fines in violation of the Eighth Amendment claim (Count V). The Township's cross-motion for summary judgment shall be GRANTED IN PART as to F.P.'s Fourth Amendment violation claim (Count III) and excessive fines in violation of the Eighth Amendment claim (Count V), but is DENIED IN PART as to the rest of F.P.'s claims.

## I. Factual Background

Martin Powelson is the owner of F.P. F.P. is a land holding company. Around 2007, Powelson purchased a multi-acre parcel in Canton Township for $550,000. (ECF No. 35-9, PageID 791). In 2017, an application was filed on behalf of F.P. to split off 16-acres from the 40-acre parcel which was zoned industrial. (ECF No. 16-2). In the Township's tentative approval letter, Canton's Planning Services notified Plaintiff's engineer that upon the split, a tree removal permit would be required prior to any tree removal. (ECF No. 16-4). In late 2017, the property split was complete, and F.P. deeded 16 acres to the Percys and their company 44650, Inc. (the "Split Parcel"). (ECF No. 34-3, PageID.673-74). After the split, F.P. retained a 24-acre parcel (the "Property") located West of Sheldon Road and South of Michigan Avenue in Canton Township. (ECF No. 35-4,

PageId.765).

Powelson's primary business is POCO signs.  *Id.* at PageID.765.
POCO builds, stores, transports, and sells signs.  *Id.* at PageID.766.  The
Property at issue in this lawsuit is adjacent to POCO signs and was
purchased with the intention of expanding POCO's operations.  *Id.*  The
Property and Split Parcel are undeveloped and covered with trees and
vegetation.  After the split, both F.P. and 44650, Inc. removed many trees
from their adjacent properties without first obtaining tree permits.  F.P.
claims the tree clearing was necessary to address flooding on the Property
and neighboring properties as well caused by a drain that was obstructed
by fallen trees and other debris. (ECF No. 35-4, PageID.766). In fact, the
parties agree the Property is traversed by a drain that is under the
jurisdiction of Wayne County.  After the County refused Powelson's request
that they clear the drain, Powelson hired Fodor Timber in the Spring of
2018 to remove the fallen trees from the drain, and to clear a path to reach
the drain, in exchange for the right to any timber felled to complete the job.
*Id.* at PageID.761.  Before the work was complete, the Township issued
F.P. a stop work order.  *Id.* at PageID.767.

F.P. asserts it removed vegetation from its Property that included
trees, scrub brush, invasive species, and some dead ash and cotton wood

trees.  Indeed, the removal of such trees requires a permit but does not require any tree replacement.  (ECF No. 29-2, PageID.533).  But the parties dispute the number, species, and location of trees removed from the property.  *See* Plaintiff's expert report of Teresa Hurst.  (ECF No. 35-5).  F.P. did not apply for a tree removal permit prior to its tree clearing activities, nor has F.P. sought such a permit retroactively at any time.

According to the Complaint, in July of 2018, the Township notified F.P. that it had violated the ordinance by removing trees without a permit and advised F.P. that it would be required to pay an undisclosed penalty.  (ECF No. 1, PageID.6).  In August, 2018, the Township's Landscape Architect and Planner Leigh Thurston inspected the property, and according to the Township's counter-complaint, she gave Powelson verbal notice of the Tree Ordinance violation.  (ECF No. 35-6, PageID.780, ECF No. 16, PageID.155-56).  On September 13, 2018, the Township issued a formal Notice of Violation of the Ordinance 5A.05 which requires a tree removal permit.  (ECF No. 35-6).  On October 12, 2018, the Township made a second visit to the property to count and measure the removed trees.  (ECF No. 16, PageID.156).  Thurston prepared a report concluding that 159 "regulated" trees were removed, including 14 "landmark" trees.  (ECF No. 16-10).  F.P. disputes her factual findings.

F.P. has presented an expert report prepared by certified arborist Teresa Hurst who observed the Township's tree inspection on October 12, 2018.  (ECF No.  35-5).  According to Hurst's report, the Township's conclusions are inaccurate as they counted tree trunks which had decay indicating that they were diseased or dead when cut down, that the Township's tree count included Poplar trees which do not require a permit under the Ordinance, and the Township misidentified the variety of trees cut down and misrepresented which trees constitute landmark trees.  *Id.* at PageID.773-74.  Hurst also opined that good forestry practices include the thinning of trees to maintain a healthy development of a wood as maturing trees compete for nutrients, water, and light.  *Id.* at PageID.775.  She further states that requiring the replanting of trees in the woodland of trees with a 2-4' caliper is ill advised as those trees are unlikely to survive and instead the better practice is to replenish with seedlings.  *Id.* at PageID.775-76.  The Township argues the court should disregard Hurst's report because it was not signed under penalty of perjury.  F.P. filed a sur-reply with leave of court amending her report to add the requisite language to comply with 28 U.S.C. § 1746.  (ECF No. 40-1, PageID.919).

F.P.'s neighbors on the Split Parcel also cleared trees on their property.  The Township has initiated civil proceedings in Wayne County

Circuit Court against F.P.'s neighbor at 44560, Inc. seeking nearly

$450,000 for violation of the Ordinance.  (ECF 26-7).  Fearing the

possibility of such enormous penalties, F.P. filed this lawsuit seeking

declaratory and injunctive relief under 42 U.S.C. § 1983.  According to

Powelson, potential buyers have told him they will not purchase the

Property because they cannot remove trees without penalty.  (ECF No. 35-

4, PageID 766).  Canton countersued for $47,898 as the amount F.P.

allegedly owes to replace removed trees.  (ECF No. 16).

Having set forth the pertinent facts in this matter, the court now

outlines the legislation at the heart of the parties' dispute.  The Tree

Ordinance requires that a tree removal permit be obtained when a property

owner, with certain exemptions, seeks to remove regulated or landmark

trees, trees within a forest, or seeks to clear cut within the dripline of a

forest.  Art. 5A.05(A).  The Tree Ordinance permit requirement does not

apply to farmers, commercial tree farms, or occupied lots of less than two

acres.  Art. 5A.05(B).  "Tree" is broadly defined to include "any woody plant

with at least one well-defined stem and having a minimum [diameter at

breast-height ("DBH") of three inches."  Art. 5A.01.  As a condition of

obtaining a permit, a landowner must either replant trees or pay a

replacement cost of all landmark trees, Art. 5A.08(A), and if more than 25

- 7 -

percent of the total inventory of regulated trees is removed, must replant or pay a replacement cost of those trees as well.  Art. 5A.08(B).  Certain nuisance species such as boxelder, ash, and cottonwood do not require replanting or replacement.  Art. 5A.08(B).  But for trees in a "forest," the restrictions are even greater.  Even removing undergrowth or brush in a forest requires the Township's approval.  Art. 5A.05(A).  "Forest" is defined as "any treed area of one-half acre or more, containing at least 28 trees with DBH of six inches or more."  Art. 5A.01.  The Township asserts the tree removal in this case occurred in a forest.

The Ordinance further divides trees which require a permit to remove into two categories: (1) regulated trees, and (2) landmark trees.  A "regulated tree" is defined as "any tree with a DBH [diameter breast height] of six inches or greater, and a "landmark tree" is defined as "any tree which stands apart from neighboring trees by size, form or species, . . . which has a DBH of 24 inches or more."  Art. 5A.01 Definitions; Art. 5A.05 (A)(1).  The Ordinance requires that a property owner replace regulated trees on a 1:1 ratio, and landmark trees on a 3:1 ratio.  5A.08(A).  In lieu of replanting, the property owner can pay the replacement cost of the tree. 5A.08(E).  As of the time of this suit, the cost of replacing a landmark tree is $450, and regulated trees are $300.  (ECF No. 35-3, PageID.753).  Using these

- 8 -

figures, the Township arrives at its $47,878 assessment.

## II. Standard for Summary Judgment

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).  The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice.  The procedure is not a disfavored procedural shortcut.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the

non-moving party.  *Tolan v. Cotton*, 572 U.S. 650, 660 (2014); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial."  *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party.  *Anderson*, 477 U.S. at 248, 252.  Rather, there must be evidence on which a jury could reasonably find for the non-movant.  *McLean*, 224 F.3d at 800 (*citing Anderson*, 477 U.S. at 252).

### III. Analysis

**A. Ripeness**

F.P. has challenged the Ordinance on its face and as applied to its property. There is no ripeness consideration as to Plaintiff's facial challenge as such challenges are ripe the moment the challenged ordinance is passed. *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 495 (1987). Canton argues that F.P.'s as applied takings challenge is not ripe for review. Although § 1983 suits do not require exhaustion of administrative remedies, in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), the Court held that a takings claim must be ripe.[1] The Court held that a takings claim challenging the application of land-use regulations is not ripe unless "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Id.* at 186. Whether or not a takings has taken place requires that the court know "the extent of permitted development" on the land in question. *MacDonald, Sommer & Frates v.*

---

[1] *Williamson County's* requirement that a takings claim does not ripen until a landowner seeks compensation through the state's inverse condemnation procedures has been overruled by *Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2179 (2019), but the finality requirement remains the law. *Id.* at 2169.

*Yolo Cty.*, 477 U.S. 340, 351 (1986). Here, based on the mandatory nature of the tree replacement costs which are owing whether a permit is granted or not, and on the fact that the Township has counter-sued Plaintiff for a sum certain of $47,898, requiring Plaintiff to file a request for a tree permit before challenging the application of the Tree Ordinance would be a futile gesture and thus, is not required.

Supreme Court and Sixth Circuit precedent supports the court's conclusion that Plaintiff's as applied challenge to the Tree Ordinance is ripe for review. In *Palazzolo v. Rhode Island*, 533 U.S. 606 (2001), the Supreme Court held that a landowner was not required to file an application for a permit to develop coastal wetlands to construct a beach club in order to ripen his takings claim where his prior applications for more modest development uses had already been rejected, thus making an application for a larger project futile. *Id.* at 624-25. The Court explained that ripeness requires that before a landowner may bring a takings claim, the land-use authority must have the "opportunity, using its own reasonable procedures, to decide and explain the reach of a challenged regulation." *Id.* at 620. But the ripeness doctrine does not require a landowner to "submit applications for their own sake," and federal ripeness rules do not require applications which would be futile. *Id.* at 622, 626.

Similarly, the Sixth Circuit has held that finality of decision is not required when such an application would be futile.  *Lilly Inv. v. City of Rochester*, 674 F. App'x 523, 527 (6th Cir. 2017).  In *Lilly Investments*, the landowner submitted several site-plan approval applications in connection with the construction of a modern dental clinic on a historic site.  *Id.* at 524-26.  The City of Rochester issued a stop-work order preventing the landowner from finishing and operating a dental clinic on the grounds that the clinic did not comply with standards for the treatment of historic properties.  *Id.* at 525.  The property owner then made many of the requested changes and submitted a new site plan, but the Commission instead of voting on the changes in the revised site plan, informed the landowner that it would remove the stop work order if the landowner would waive certain claims against the City and paid $40,000.  *Id.* at 528-29. After the landowner filed a regulatory takings case which the City removed to federal court, the City argued plaintiff's claims were not ripe.  *Id.* at 526. But the Sixth Circuit found that plaintiff's as applied takings claim was ripe because the City's procedures for site approval were unfair and were to blame for that landowner's failure to receive final approval of his site plan. *Id.* at 529.  The Sixth Circuit recognized that there are several exceptions to the finality requirement, including when the parties have reached an

"impasse" such that further proceedings "would not be productive," or where a governmental body uses repetitive or unfair land-use procedures to avoid a final decision. *Id.* at 527 (internal quotation marks and citations omitted). In *Lilly Investments*, the above referenced exceptions were said to dovetail under the umbrella of "futility." *Id.*

Here, F.P. argues that applying for a tree removal permit would be futile because the Ordinance mandates that a permit "shall" be required prior to tree removal, and requires that if the permit is granted, replacement or payment into the tree fund "shall be" required. Canton Code of Ordinances Art. 5A.05, 5A.08 (A)(B)(D)(E). Based on the Township's notice of violation of the Tree Ordinance, stop work order, and counter-suit for a sum certain, the application of the Tree Ordinance to Plaintiff's property is final. It is apparent that the parties are at an impasse, and requiring Plaintiff to file an application for a tree permit would not be productive. Given the mandatory nature of the tree replacement requirements as set forth in the Ordinance, the application of the land-use regulation as it applies to Plaintiff's property is clear, and there is no doubt about how the Township will assess tree replacement costs against Plaintiff. The Township has sued F.P. for the exact number of trees which it believes were removed from the property, and the exact penalties it

believes are required.  Thus, requiring Plaintiff to file a tree permit application or pursue an appeal to the ZBA, which lacks the authority to abrogate the Tree Ordinance requirements or to grant a land use variance, would be a futile exercise with no likelihood of fruitfulness.

The Township counters that F.P. could have appealed the application of the ordinance to the Zoning Board of Appeals ("ZBA") before the notice of violation was issued.  Although a litigant's failure to seek recourse to the Zoning Board of Appeals may sometimes lead to the conclusion that a landowner's takings claim is not ripe because the governmental entity's decision is not final, such an appeal is not required when it would be futile. *Seguin v. City of Sterling Heights*, 968 F.2d 584, 587-88 (6th Cir. 1992).  In this case, the ZBA lacks the authority to abrogate the Tree Ordinance requirements and "is not authorized to grant variances related to the use of land."  Art. 27.05(D)(2); ECF No. 35-8, PageID788.

The Township also argues that *People v. Novie*, 976 N.Y.S.2d 636, 643  (App. Term 2013) supports its position that Plaintiff's claim is not ripe because it did not apply for a tree removal permit or file an appeal with the ZBA.  *Novie* is distinguishable as the Village Code in that case specifically provided for an aggrieved landowner to apply for an exception to the tree ordinance's permit requirement to the Planning Board.  *Id.* at 640.

Furthermore, the tree ordinance in that case did not condition the granting of a permit on replacing trees or paying to a tree fund, but rather, provided that a compensatory planting or payment might be required on an ad hoc basis where an applicant demonstrated that satisfying the tree removal ordinance might work an undue hardship. *Id.* Here, by contrast, there is no provision for an exception from the tree replacement costs that are mandatory under the Tree Ordinance.

The Township also argues that F.P.'s claims for declaratory relief must be denied because F.P. allegedly has "unclean hands" because it removed trees without first obtaining a permit. But, as F.P. points out, the argument lacks merit where the challenge to the Ordinance's constitutionality does not depend on the specific number of trees which have been removed but prevents the removal of *any* regulated tree without a permit. The Township argues that the specific number of trees removed is relevant to the constitutional question because the Ordinance provides an exemption from the permit requirements when less than 25 percent of the regulated trees are removed. But neither party has taken the position that F.P. removed less than 25 percent of its trees. To the contrary, the Township has sued for a sum certain based on the conclusion that a permit was required, which could only be the case if more than 25 percent of the

trees were removed.  In sum, based on the current posture of the case, the Township's decision that Plaintiff owes $47,898 in tree replacement costs is a final decision which is ripe for review.

## B. Takings Claim (Counts I and II)

### 1. Per Se Regulatory Takings

Counts I and II allege facial and as applied regulatory takings in violation of the Fifth Amendment.   Since the Supreme Court decided the seminal case of *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393 (1922), it is clear that takings claims are not limited to those situations where the government directly appropriates property, but a "regulatory taking" is compensable when the government imposed restriction on the use of the property goes "too far."  *Id.* at 415.  The Sixth Circuit has summarized regulatory takings analysis as follows: "Where a governmental action deprives property owners of 'all economically beneficial uses' of their property, it is a categorical regulatory taking under *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1019, (1992).  In all other cases—that is, where the property is not rendered valueless—the Court uses the balancing test of *Penn Central Transportation Co. v. City of New York,* 438 U.S. 1041 (1978)." *Tennessee Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 455 (6th Cir. 2009).

Since *Penn Central* was decided, the court has reaffirmed that there are situations where the government's action amounts to a *per se* takings which does not require analysis of the *Penn Central* factors.  In *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426-35 (1982), for example, the Supreme Court held that requiring an owner of an apartment building to install a cable box on her rooftop was a physical taking of real property requiring compensation.  And in *Horne v. Dep't of Agric.*, 135 S. Ct. 2419 (2015), the court found that a government program that required raisin growers to transfer as much as 47 percent of their crop for the account of the government free of charge amounted to a *per se* regulatory taking without consideration of the *Penn Central* factors.  *Id.* at 2428.

Here, Counts I and II of the Complaint allege that the Tree Ordinance amounts to a *per se* regulatory taking similar to *Loretto* and *Horne*.  But the court finds that the Tree Ordinance is distinguishable from the government activity in those cases, and determines that the *Penn Central* factors must be evaluated.  Unlike *Loretto*, the government did not intrude on F.P.'s property, and there was no physical appropriation of property.  Also, here, landowners could choose to pay into the tree fund, rather than replanting on their property.  Unlike *Horne*, where the government required the raisin growers to turn over their raisins to the government for its use, and limited

their crop production, with no guarantee that they would be paid for doing so, 135 S. Ct. at 2428, here, the government regulation at stake does not physically take F.P.'s trees for public use.  Given these distinctions from *Loretto* and *Horne*, the Tree Ordinance is not a *per se* taking.  Thus, the court analyzes whether the Tree Ordinance goes "too far" under the *Penn Central* balancing test.

### 2.  *Penn Central* Balancing Test

In *Penn Central*, the court established standards for evaluating whether a government regulation gives rise to a takings claim, and explained that courts must engage in an ad hoc factual inquiry that considers a myriad of factors including, (1) the economic impact of the regulation, (2) its interference with reasonable investment-backed expectations, and (3) the character of the government action.  438 U.S. at 124.  The *Penn Central* inquiry focuses "upon the magnitude of a regulation's economic impact and the degree to which it interferes with legitimate property interests."  *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 540 (2005).  The issue is "the severity of the burden that government imposes upon private property rights."  *Id.* at 539. The Fifth Amendment's guarantee that the government will not take private property for public use without just compensation is "'designed to bar Government from forcing

some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'"  *Penn Central*, 438 U.S. at 123-24 (quoting *Armstrong v. United States*, 364 U.S. 40, 49 (1960)).

### a.   Economic Impact of Tree Ordinance

The first *Penn Central* factor is the economic impact of the Ordinance.  Without question, the impact is significant.  Canton is seeking $47,898 for removal of a small portion of the trees on F.P.'s property. According to Powelson, the replacement cost of removing the trees makes it economically prohibitive to expand his sign business, and others have expressed a hesitancy to buy his Property for the same reason.  (ECF No. 26-5, PageID 388).  The Township urges the court to disregard Powelson's declaration on the grounds that there is no foundation for his statement that expanding his business would be prohibitively expensive, or to support his conclusion that it would be difficult for him to sell the property.  (ECF No. 34, PageID.642).  F.P. responds that even if the court disregards Powelson's declaration, it has established that clearing a significant portion of the property could easily be hundreds of thousands of dollars based on the $47,878 the Township is seeking for the removal from a small fraction of the property.  Indeed, F.P.'s neighbors have been assessed $450,000 in tree replacement costs for allegedly clearing their 16-acre property.  (ECF

No. 26-7).  Also, F.P. purchased the entire 62-acre property in 2007 for $550,000.  (ECF No. 35-9, PageID.791).  Given these undisputed facts, the economic impact is substantial, the costs of tree removal approximates or exceeds the value of the property, and weighs in favor of a finding that the regulation goes too far.

###   b.   Investment-Backed Expectations

According to Powelson, when he purchased the industrially-zoned property from Canton, he had the reasonable expectation that it could be put to business use.  (ECF No. 26-5, PageID.388).  Although the Township has moved to strike many paragraphs of Powelson's declaration for various reasons, it has not moved to strike Paragraphs 6 and 7.  In these paragraphs, Powelson states he bought the Property at issue, which is adjacent to POCO signs, with the intention of expanding POCO's operations in the future, and that the Property was purchased as a replacement for developed property that POCO sold to Sysco as part of a negotiation with Canton to help Sysco stay in the area.  *Id.*  The Township, on the other hand, contends that F.P. was on notice of the Tree Ordinance at the time he purchased the Property, and was reminded of the Ordinance's tree permit and replacement provisions when it applied for the parcel to be split in 2016.

The Supreme Court has held that acquisition of title after the effective date of the state-imposed restriction does not bar a takings claim under *Penn Central*. *Palazzolo*, 533 U.S. at 630, 633. But "[a] reasonable restriction that predates a landowner's acquisition, however, can be one of the objective factors that most landowners would reasonably consider in forming fair expectations about their property." *Murr v. Wisconsin*, 137 S. Ct. 1933, 1945 (2017). The fact that the Ordinance existed before F.P. purchased the property does not translate into a finding that the Ordinance passes constitutional muster. It is not reasonable for F.P. to be required to keep his wooded Property undeveloped, or pay an exorbitant price to replace trees, when he purchased property which was zoned industrial with the expectation that he could expand his adjacent sign business on that Property. In considering Powelson's investment-backed expectations, the Supreme Court has suggested that "courts should assess the value of the property under the challenged regulation, with special attention to the effect of burdened land on the value of other holdings." *Id.* at 1946. Here, Powelson purchased 62-acres in 2007 for $500,000. Now his neighbor who owns 16-acres on the split parcel is being assessed $450,000 in tree replacement costs for clearing its property, and F.P. has stopped clearing trees on its property for fear of similar exorbitant replacement costs. In

considering F.P.'s expectations, the court is mindful that the Ordinance's tree replacement costs for clearing the Property, should F.P. choose to do so, like his adjoining neighbors have done, likely exceeds the value of the property itself. Given the magnitude of the tree replacement costs which allegedly prohibit F.P. from either removing trees and going forward with an expansion of its sign company, or from selling the property, suggest that the second factor of the *Penn Central* three-part test has been satisfied.

### c.     Character of the Government Action

As to the third-prong of *Penn Central's* balancing test, the court considers the character of the government action. In considering this factor, the court is guided by the Supreme Court's admonition that regulations that are akin to traditional nuisance abatement generally do not amount to compensable takings. *See Keystone Bituminous Coal*, 480 U.S. at 488. The parties dispute whether the Ordinance amounts to nuisance abatement. The Township argues that it is under the Canton Zoning Ordinance, Appendix A, § 27.09(1), which provides that "uses carried on in violation of any provision of this ordinance are hereby declared to be a *nuisance per se*, and shall be subject to abatement or other action by a court of appropriate jurisdiction." F.P., on the other hand, argues persuasively that a municipality may not immunize its local zoning

ordinance from constitutional challenge by declaring that any violation of the zoning code is a nuisance.  The court agrees and examines the character of the government action at stake without the presumption that any violation of the ordinance amounts to a nuisance *per se.*

The Township contends that the purpose of the Ordinance as set forth in the regulation itself is "to promote an increased quality of life through the regulation, maintenance and protection of trees, forests, and other natural resources."  (ECF No. 1-1, PageID.28, § 5A.02).  The Township argues that this regulation serves the public interest and is ubiquitous to all of its residents.  F.P., on the other hand, argues that it is being asked to bear a disproportionate burden to facilitate Canton's desire to maintain wooded areas in the Township, and that because the Ordinance seeks to provide a public benefit, F.P. should not be singled out to provide this benefit without just compensation.

Indeed, the Sixth Circuit has reiterated the Supreme Court's admonition that a taking may occur when the government regulation "'forc[es] some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'" *Bredesen*, 556 F.3d at 453 (quoting *Armstrong,* 364 U.S. at 49).  Here, the character of the government action is to require a private property owner to maintain the

trees on its property for the benefit of the community at large.  This is a burden that should be shared by the community as a whole.  Accordingly, F.P. has satisfied the third factor of the *Penn Central* three-part balancing test.

Having considered the three *Penn Central* factors to be balanced, the court finds that as applied to this Plaintiff the Tree Ordinance goes too far and is an unconstitutional regulatory taking.  Accordingly, F.P.'s motion for summary judgment as to the takings challenge to the Ordinance as pled in Counts I and II of the Complaint shall be granted.

## 3.    Other Decisions Regarding Tree Removal Ordinances

The Township relies on a number of  non-binding cases involving constitutional challenges to similar tree ordinances, but none of those cases persuade the court that it should decide this matter in the Township's favor.  The Township argues this case is akin to *Georgia Outdoor Network, Inc. v. Marion Cty.*, 652 F. Supp. 2d 1355 (M.D. Ga. 2009), where the district court held that an ordinance requiring that outdoor recreation camps maintain a 50-foot buffer zone which requires the preservation of trees, shrubs and plants was not a taking because it did not deny a landowner of all economically viable use of his land.  *Id.* at 1370-71.  *Georgia Outdoor Network* is inapplicable as that case involved only a facial challenge to the

ordinance, which requires proof that the mere enactment of the legislation deprives a landowner of "all or substantially all economically viable use of his land." *Id.* at 1371 (internal quotation marks and citation omitted). By contrast, this case involves an as applied challenge which allows for consideration of the ad hoc balancing test set forth in *Penn Central* to determine if the regulation goes "too far." *Lingle*, 544 U.S. at 538.

Similarly, *Greater Atlanta Homebuilders Ass'n v. Dekalb Cty.*, 277 Ga. 295, 297 (2003) involved a facial challenge only to the county's tree ordinance which required a showing that the ordinance deprived the landowners of "any economically viable use" of their land, a burden they were unable to meet. Also, the ordinance there allowed for special exceptions. *Id.* at 297-98. The Township also relies on *Huron Charter Twp. v. Fox*, No. 289734, 2010 WL 715842 (Mich. Ct. App. 2010), which did involve a tree removal permit ordinance, but no takings claim, or other constitutional challenge.

The Township relies on the unpublished decision *Dan & Jan Clark, LLC v. Charter Twp. of Orion*, No. 284238, 2009 WL 1830749, *9-10 (Mich. Ct. App. June 25, 2009), where the Michigan Court of Appeals considered a facial challenge to a tree ordinance in Orion Township very similar to the one at issue here. The Orion ordinance required that a landowner obtain a

permit prior to tree removal and either replace or donate to a tree fund for each removed tree.  Indeed, the court there did find no taking, but oddly analyzed the issue under the ad hoc balancing test of *Penn Central*, which the Supreme Court has recognized is a factual inquiry and only governs as applied challenges, not facial claims.  *See Tahoe–Sierra Preserv. Council, Inc. v. Tahoe Reg. Planning Agency,* 535 U.S. 302, 334 (2002) ("[I]f petitioners had challenged the application of the moratoria to their individual parcels, instead of making a facial challenge, some of them might have prevailed under a *Penn Central* analysis.").  Although recognizing that the challenge was facial only, the court then faulted plaintiff for failing to introduce evidence that the tree ordinance had any economic impact on its property.  2009 WL 1830749, at *10.  The court is not persuaded by any of the above cited decisions, none of which involved an as applied takings challenge to a tree ordinance.

## 4.    Land-Use Exaction Theory (Count IV)

In addition to an alleged "physical" taking as in *Loretto*, or a *Penn Central* taking, a property owner seeking to challenge a government regulation as an uncompensated taking of private property may also proceed under a land-use exaction theory for violating the standards set out in *Nollan v. California Coastal Comm'n*, 483 U.S. 825 (1987) and *Dolan*

*v. City of Tigard*, 512 U.S. 374 (1994).  Here, F.P. seeks to prevail under the *Nollan/Dolan* theory as well.  An exaction takes place when a governmental entity requires an action by a landowner as a condition to obtaining governmental approval of a requested land development.  A land-use exaction is not compensable when there is a "'nexus' and 'rough proportionality' between the government's demand and the effects of the proposed land use."  *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 599 (2013) (citations omitted).

In *Nollan*, the Court found that a taking occurred when the California Coastal Commission premised the property owners' rebuilding permit on the establishment of an easement across their property which would connect two adjacent public beaches.  483 U.S. at 827-29.  The Court found that the Commission failed to establish a valid exercise of its land-use powers because the easement required for the Nollans' building permit was not likely to address the governmental purpose alleged — to diminish the obstruction of residents' view of the ocean. *Id.* at 838-39.

Similarly, in *Dolan*, the government required that a property owner dedicate a floodplain and bicycle path easements as a condition of obtaining a development permit to expand the size of her store.  512 U.S. at 379-80.  The Court held that for the exaction to be permissible, the

exaction must be "roughly proportional" "both in nature and extent to the impact of the proposed development" which requires an individualized assessment of the facts.  512 U.S. at 391.  The City argued the easement was necessary because there was an increased storm water flow and likely increased traffic congestion as a result of petitioner's proposed new building.  *Id.* at 388-89.  But as to the floodplain easement, the court found that the City had not shown a reasonable relationship between it and petitioner's proposed new building.  *Id.* at 395.  The Court also found the City's conclusory statements about the potential for a bicycle path to offset increased traffic were insufficient to satisfy the "rough proportionality" test, instead, requiring that the City must quantify its findings.  *Id.* at 395-96.

The parties here dispute whether the Tree Ordinance amounts to an unconstitutional land-use regulation pursuant to the *Nollan/Dolan* theory. Here, the question is whether the purpose to be served by the Ordinance, namely an "increased quality of life" because of the "maintenance and protection of trees," (ECF No. 1-1, PageID.28), is "roughly proportional" to the burden of requiring the replacement of trees or payment into the tree fund of $300 to $450 per tree.  The Township also argues that the tree replacement requirement is designed to beautify its community, avoid becoming the "next concrete jungle," and to address the problem of a

shortage of trees in Canton.  The Township argues that the testimony of Jeff Goulet and Leigh Thurston establishes that the fees of $300 for regulated trees and $450 for landmark trees are an average market cost as of 2006.

F.P., on the other hand, argues that the Tree Ordinance fails to meet the "rough proportionality" test because it does not allow site-specific analysis but charges the same tree replacement costs regardless of the actual effects of tree removal from the property in question.  As F.P.'s expert testified, the removal of some trees on a landowner's property may amount to good forestry practice and improve the woodlands because the thinning of smaller trees may enable larger trees to prosper.  (ECF No. 35-5, PageID.775-76).  Also, planting seedlings as opposed to trees of a larger caliper to replace removed trees may be a better forestry practice as they are more likely to thrive.  *Id.*  The Township, on the other hand, argues that there is no better proportionality than a 1:1 replacement of trees removed.

The Township also argues that the Ordinance does contemplate fact specific analysis as it provides for the following factors, among others, to be considered in determining whether or not to grant a tree removal permit: scenic assets, wind blocks, noise buffers, soil quality, and habitat quality. Art.  § 5A.05.F.  But these considerations only concern whether a permit

may be granted in the first instance, and do not factor into the court's consideration as to the number of replantings required or amount to be paid to the tree fund for every regulated and landmark tree to be removed. Article § 5A.08.  Here, F.P. required a permit to remove any tree because its property was deemed a forest.  Consideration of the above factors is relevant to the permissibility of a tree permit, but does not play any part in determining mitigation.  The Township admits that it engaged in no site-specific evaluation in this case to determine the impact of tree removal.

F.P. relies on *Mira Mar Dev. Corp. v. City of Coppell*, 421 S.W.3d 74 (Tex. App. 2013) where the court held that a local ordinance that required a landowner to receive permission to remove trees of a certain size, and to pay a retribution fee in exchange for a tree removal permit, to be used to plant trees on public property, purchase wooded areas, and support educational projects, violated *Dolan's* rough proportionality requirement because there was no site specific analysis measuring the impact of the removal on the community.  *Id.* at 95-96.  The court held that the retribution fee amounted to a compensable land-use exaction because "the City presented no evidence that the removal of trees on the appellant's private property would increase the need for trees on public property or for the other programs beyond what already existed before appellant removed the

trees on its property." *Id.* at 96.  Thus, the court entered summary

judgment in favor of the landowner and awarded it $34,500 in tree

retribution fees.

In order to determine if a *Nollan/Dolan* regulatory taking has

occurred, this court is required to engage in a fact intensive inquiry

weighing the burden to be imposed on the landowner by the government's

imposition of a tree replacement fee, against the impact of the tree removal

on the community, to gauge if there is "rough proportionality" between the

two.  The Township argues this inquiry is compromised by F.P.'s failure to

request a tree removal permit, to submit a tree inventory, site plan, or plot

plan that the Township could review to determine if F.P. even sought to

remove over 25 percent of its trees as a permit is only required in those

circumstances.  The Township argues that having failed to file for a tree

removal permit, F.P. has unclean hands which prevented the Township

from conducting an individualized assessment.  This argument is largely

duplicative of the ripeness argument which this court addressed and

rejected above.  Based on the surveys conducted by Plaintiff's expert

Hurst, and the Township's Landscape Architect and Planner Thurston, the

court has a sufficient record upon which to analyze and decide the

constitutional questions presented here.

As F.P. never sought a tree removal permit and failed to submit a tree survey as a condition thereto as required under the Ordinance, the Township bases its tree replacement fee of $47,898 on a survey conducted on the property after the removal took place.  But Canton undertook no case specific analysis of the impact of removing trees on F.P.'s property in particular, but relies generally on the desirability of more trees in the community as a whole, and a desire to avoid becoming a "concrete jungle."

The Township also argues that the Ordinance allows for consideration of site-specific evidence in determining mitigation, but the Ordinance is clear that the considerations required for a tree removal permit under Article § 5A.05 do not alter the mandatory nature of the tree replacement or payment into the tree fund requirement under Article 5A.08. (ECF No. 40-1, PageID.915).  Canton's representative testified that mitigation payments are based solely on trees size and number of trees removed, regardless of impact. *Id.* at PageID.912-14.

It is undisputed that the Tree Ordinance requires property owners to pay the market value of any removed tree into the tree fund or plant a pre-set number of replacement trees, without any analysis of the impact of tree removal on neighbors, on aesthetics of the site and the surrounding area, on air quality, noise abatement, or any other site specific consideration.

The tree replacement requirement is a *per se* condition of any tree removal permit. The mandatory nature of the tree replacement fees set forth in Ordinance, without any site specific analysis, renders the Ordinance invalid under *Nollan/Dolan* as there is no method to ensure that the permit requirement is roughly proportionate to the environmental and economic impact of tree removal on the Township and its residents. The 1:1 ratio does not satisfy *Nollan/Dolan* as it is possible the removal of certain trees from a landowner's property will not require a new planting in each instance in order to preserve the environment. As in *Mira Mar*, the Township's failure to consider the specific impact of tree removal on the community in determining the need for tree replacement renders its Ordinance as applied to F.P. invalid. In sum, the Tree Ordinance as applied to F.P. qualifies as a land-use exaction that does not pass constitutional muster and is an impermissible takings.

**C.   Fourth Amendment (Count III)**

F.P. also argues that the Tree Ordinance amounts to an unreasonable seizure in violation of the Fourth Amendment. The Fourth Amendment provides, in relevant part, that the people are "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. const. amend. IV. Although F.P. is correct that the

Fourth Amendment's protections extend to real property, these protections are limited to the home and its curtilage or the area "immediately surrounding and associated with the home." *Florida v. Jardines*, 569 U.S. 1, 6 (2013) (quoting *Oliver v. United States*, 466 U.S. 170, 180 (1984)). The Supreme Court has observed that "[t]he Government's physical intrusion on such an area [as an open field] is of no Fourth Amendment significance." *United States v. Jones*, 565 U.S. 400, 411 (2012).

Unlike the 24-acre tract at issue here that does not include a home, the cases F.P. relies upon in support of its Fourth Amendment violation claim involved land use regulations that interfered with a property owner's home or within the curtilage of the home. *See Severance v. Patterson,* 566 F.3d 490, 494 (5th Cir. 2009) (challenging imposition of easement over two homes); *Presley v. City of Charlottesville*, 464 F.3d 480, 484 n.3 (4th Cir. 2006) (defendants did not contend that the property allegedly seized — a trail through plaintiff's less-than-one-acre yard — extended beyond the curtilage of the home). F.P. also relies on cases involving "effects" which are protected by the Fourth Amendment, *see United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (wrapped parcel); *Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir. 2005) (vehicle), unlike real property that is neither a home nor its surrounding curtilage which is not. Accordingly,

Canton is entitled to summary judgment on F.P.'s alleged Fourth Amendment violation pled in Count III of the Complaint.

## D.    Eighth Amendment (Count V)

Count V of the Complaint alleges that the Tree Ordinance's permit fees amount to excessive fines in violation of the Eighth Amendment.  The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.  The Excessive Fines Clause of the Eighth Amendment prohibits the government from imposing excessive fines as punishment.  To determine if an excessive fine exists in violation of the Eighth Amendment, the court must first determine whether a fine exists which is punitive in nature, and if so, must address whether the fine was grossly disproportional to the offense.  *United States v. Bajakajian*, 524 U.S. 321, 328, 336-37 (1998).

The Supreme Court has held that the Eighth Amendment's protection against excessive fines applies to both criminal and civil fines.  *Austin v. United States*, 509 U.S. 602, 622 (1993).  In *Austin,* the Supreme Court addressed the question of whether the Excessive Fines Clause of the Eighth Amendment applied to in rem civil forfeiture proceedings.  509 U.S. at 606.  In that case, the government, relying on two civil forfeiture statutes,

forfeited the petitioner's mobile home and autobody shop which were allegedly used to further his drug-trafficking activities for which he pled guilty. 509 U.S. at 604-05.  The Court found that the Eighth Amendment prohibition of excessive fines applied to civil fines as well as criminal fines where those penalties amount to "'payment to a sovereign as punishment for some offense.'"  *Id.* at 622 (quoting *Browning-Ferris Indus. of Vt. Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265 (1989)).  The Court found that the in rem civil forfeiture proceedings were intended as punishment by Congress who enacted the relevant statutes to act as an additional deterrent in drug trafficking cases, *id.* at 620, and because the statutes exempted innocent owners from forfeiture proceedings, led to the conclusion that the civil sanctions were indeed intended as punishment and thus limited in scope by the Excessive Fines Clause.  *Id.* at 619-22.

Plaintiff argues that *Austin* requires a finding here that the permit costs for tree removal constitute excessive fines.  To meet this burden, Plaintiff must show that the fine is payment as "punishment for some offense."  *Id.* at 622.  Plaintiff contends the permit costs are punitive because the Township's representative testified during his deposition that the Township required after-the-fact payments to ensure compliance with the Tree Ordinance and to deter individuals from removing trees.  (ECF No.

- 37 -

26-3, PageID.354, 360-62). But the removal of trees is not an "offense" but merely a regulated land use activity.[2] The replacement costs associated with the granting of a tree removal permit, whether a landowner chooses to pay into the tree fund or replaces trees herself, is not penal in nature, but remedial. The Township uses any monies paid in connection with a tree removal permit solely to replace and maintain trees. (ECF No. 29-2, PageID.558). As the Township aptly points out, the tree permit fees are analogous to requiring a business to pay a permit fee to access a municipal water supply or sewer system.

Plaintiff also relies on *WCI, Inc. v. Ohio Dep't of Pub. Safety*, 774 F. App'x 959 (6th Cir. 2019), where the Sixth Circuit found the Eighth Amendment applied when the Ohio Liquor Commission conditioned the withholding of revocation of plaintiff's liquor license on the payment of a $25,000 fee after plaintiff was found to have violated a state statute prohibiting nude dancing at an establishment with a liquor license. *Id.* at 961, 967. The Sixth Circuit found the appellee conceded the question of whether the fee was penal in nature when it referred to the fee as a "penalty for . . . misconduct." *Id.* at 967. By contrast, there is no

---

[2] The removal of trees without a permit is a violation of the Canton Township Ordinance, but Plaintiff has not challenged the constitutionality of that provision. Art. 27.09(3).

concession here that the permit costs of tree removal amounts to a penalty for misconduct.

Because the court does not find that the permit requirements amount to a fine that is punitive in nature, the court does not reach the second question in any excessive fines analysis: whether the fine is grossly disproportional to the gravity of the offense.  Plaintiff argues the tree removal permit fees are excessive because the criminal penalty for violating a zoning ordinance is only $500, but permit fees are nearly 100 times that amount.  But Plaintiff is comparing apples to oranges.  There is no criminal offense at stake here.  The tree replacement costs at issue are based on the alleged market costs to replant removed trees within the context of land use regulation.  The question of whether the fees assessed are excessive does not fall within the scope of the Eighth Amendment, and is more properly analyzed under the Fifth Amendment Takings Clause.

## IV. Conclusion

Defendant's motion for summary judgment (ECF No. 29) is GRANTED IN PART in that Plaintiff's Fourth Amendment violation claim (Count III), and excessive fines violation claim (Count V) are DISMISSED, but is DENIED IN PART as to Plaintiff's takings claim as pled in Count I, II, and IV.  In reaching these conclusions, the court has rejected F.P.'s theory

that the Ordinance is a *per* se regulatory taking under *Horne, supra*, and *Loretta, supra*, but has found that the Ordinance is an unconstitutional takings as applied to F.P. under the *Penn Central* balancing test and the *Nollan/Dolan* rough proportionality test. Plaintiff's motion for summary judgment (ECF No. 26) is GRANTED IN PART as to Plaintiff's takings claims (Counts I, II, IV), and DENIED IN PART as to Plaintiff's Fourth Amendment violation claim (Count III), and excessive fines violation claim (Count V).

Having ruled on all of Plaintiff's federal claims, the court declines to exercise supplemental jurisdiction over the Township's Counter-Complaint pursuant to 28 U.S.C. § 1367(c)(3). *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521-22 (6th Cir. 2007); *Musson Theatrical v. Federal Express Corp.*, 89 F.3d 1244, 1254-55(6th Cir. 1996). Accordingly, the Township's Counter-Complaint is DISMISSED WITHOUT PREJUDICE.

**IT IS SO ORDERED**.

Dated: April 23, 2020

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
April 23, 2020, by electronic and/or ordinary mail.

s/Brianna Sauve
Deputy Clerk